

# DETYENS SHIPYARDS INC.
### 1670 DRYDOCK AVENUE
### BUILDING 236, SUITE 200
### NORTH CHARLESTON, SC 29405-2121

## GENERAL SHIP REPAIRS

TEL: (843) 308-8000                                    FAX: (843) 308-8059

September 5, 2018

VIA EMAIL ; lee.gearing@crowley.com
Crowley Government Services, Inc. (CGS)
9487 Regency Square Blvd.
Jacksonville, FL 32225


Attn:  Lee A. Gearing, Manager
       Contract Compliance, CGS


Subj:  USNS LUMMUS DSI #5021


Dear Mr. Gearing,

Attached please find the executed BIMCO contract and page 20 of 20 of the CGS
Commercial Procurement Clauses for the subject vessel.

Also, for the sake of good order, I have attached the Clarifications and Exemptions
submitted as part of our Proposal No. 5021 dated August 1, 2018.

The insurance certificates have been requested from our underwriters and should be
sent to you in the very near future.

Please let us know if you need anything else.

Sincerely,

DETYENS SHIPYARDS, INC.

Peter C. Browne, Jr.
Vice President - Estimating


1

# Exhibit A

| 1. Place and date<br>**Jacksonville, FL August 24, 2018** | **BIMCO STANDARD SHIP REPAIR CONTRACT**<br>**CODE NAME: REPAIRCON**<br>PART I |
|---|---|
| 2. Owners (Full style and address) (Cl. 1)<br>**Crowley Government Services, Inc. (CGS)**<br>**9487 Regency Square Blvd. Jacksonville, FL 32225 on behalf of the U.S. Government , (owners)**<br>Owners warrant that they are*/are not* bareboat charterers<br>(* delete as applicable) | 3. Contractors (Full style and address)(Cl. 1)<br>**Detyens Shipyard Inc.**<br>**North Charleston, SC**<br>**92405-2121** |
| 4. Vessel's name (Cl. 1)<br>**USNS LUMMUS, MMC-12** | 5. Contractors' Yard (Cl. 1)<br>**Same as Above** |
| 6. Contract Period (Cl. 1 and Cl. 2(a)(iii))<br>**November 15, 2018 - January 19, 2019** | 7. Vessel's description (Cl. 1)<br>**Public Vessel (U.S. Naval Ship)**<br>Flag /Year built:<br>**1986**<br>Port of registry:<br>**Not Applicable, U.S. Naval Vessel**<br>Classification Society:<br>**ABS**<br>DWT Mts (Summer):<br>**26,949 MT**<br>GT/NT:<br>**44,543 GT**<br>LOA/LBP:<br>**673 T, 02 IN**<br>Breadth/Depth/Draft moulded:<br>**105 FT/33 FT** |
| 8. Delivery Date (Cl. 4(a))<br>**On or about November 15, 2018** | 9. Cancellation Date (Cl. 4(b)(i))<br>**November 15, 2018** | |
| 10. Contract Price and currency (Cl. 1 and 5(a))<br>**$14,244,574.00** | |
| 11. Overtime periods and rates (Cl. 2(a)(iii))<br>**See attached Annex "C" Tariff Rates** | |
| 12. Owners' Representative(s) (Cl. 3(a))<br>**Dennis Turnquist** | 13. Guarantee period in months (Cl. 7(b))<br>**6 Months from the date of acceptance** |
| 14. Payment terms (Cl. 5(b))<br><br>**See Attachment "A" SER 25** | |

| 15. Total liability | | 16. Liability for late redelivery (Cl. 6(a)) | |
|---|---|---|---|
| (a) Contractors' (Cl. 6(a)), (b)(iv)(1))<br>**$30 million USD** | (b) Owners' (Cl. 6(b)(iv)(2))<br> | Daily Rate<br>**$84, 416-** | Maximum liability |

| 17. Interest rate (Cl. 4(b)(iii), 5(b)(ii) and (iv))<br>**None shall apply** | 18. Law and Jurisdiction/Dispute resolution (state 12(a), 12(b) or 12(c)) as agreed, if 12(c) agreed state place of arbitration (if not filled in 12(c) shall apply) (Cl. 12) |
|---|---|
| 19. Redelivery Termination Date (Cl. 9(a)(ii)) | 12b Clause 12, as amended, shall apply |

| 20. Numbers of additional clauses attached, if any<br>**Attachment "A" Crowley Government Services, Inc. (CGS) Terms and Conditions for Drydocking and**<br>**Attachment "B" Crowley Government Services, Inc. (CGS) Flow Down Clauses for Subcontracts under Prime Contract No. N62387-15-C-3135 shall apply.** |
|---|

It is mutually agreed between the party stated in Box 2 and the party stated in Box 3 that this Contract consisting of PART I and PART II as well as Annex "A" (Specification), Annex "B" (Work Variation Change Order Form) and, if applicable, Annex "C" (Tariff) shall be performed subject to the conditions contained herein. In the event of a conflict of conditions, the provisions of PART I, Attachment "B" and Attachment "A", and Annexes "A" and "B" and, if applicable, Annex "C" shall prevail over those of PART II to the extent of such conflict, but no further.

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.





# Exhibit A

*(left margin, vertical text:)* Printed by BIMCO's idea    Copyright, published by BIMCO, Copenhagen

| Signature (Owners) | Signature (Contractors) | 9/5/18 |
|---|---|---|
| _Michael Dolaska_ V.P. | _Peter C. Braug_ - VP ESTIMATING | |

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# Exhibit A

USNS LUMMUS

Clarifications and Exceptions:

1.      No allowance has been made for opening and/or cleaning and/or gas free certification of any tanks, cofferdams, voids, etc. unless specifically identified.

2.      Any work items stating that all repairs and hot work shall be completed prior to the start of any painting – or words to that effect – are understood to mean known work in the vicinity of the painting as it applies to the work item in which it is contained.

3.      With regards to any question asked that the response received suggested that the shipyard should take the opportunity to perform a ship check we respectfully point out that no ship check was offered and nowhere within the documents provided is there a requirement to attend a ship check.  Therefore, we reserve the right to adjust our price for those work items once the existing conditions are identified.

4.      Any pricing provided for the "overhaul" of hydraulic cylinders includes disassembly, cleaning, inspection, a written report, cylinder rod polishing and reassembly with new seals only.

5.      We take exception to cleaning of tanks with hot water for safety and quality assurance reasons and would be happy to discuss this further at your convenience.

6.      For all surface preparation and coating work items - Areas inaccessible to or that could be damaged by UHP water blasting would be power tooled to an SP-3.  Coatings would be applied via brush, roll or limited spray at shipyards discretion. All spot work to be in minimum one (1) $ft^2$ increments and evenly divided as to the degree of difficulty.

7.      We are not sure we agree on the scope of work required on several surface preparations and coating items as well as cleaning items and would be happy to discuss this further at your convenience.  The items we refer to are 112, 120, 122, 126, 127, 133, 256, 182, 197, 528 as a minimum.

8.      Repairs not specifically identified are not included in this bid proposal (i.e. "as required", "if needed", etc.)  Work items affected by this statement are 109, 119, 124, 158, 160, 165, 194, 312, 506, 513, **_523_**, 528, **_555_**, 574, 599, 802, 803 as a minimum.  We would be happy to discuss this further at your convenience.

As a result of #8., above we offer the following budgetary pricing:

Work item 523 – USNS BUTTON - Until such time as the actual scope of this work item can be clearly defined, we have allowed 4,500 shipyard hours of labor, $50,000 for direct material and $20,000 for sub-contractor to include lifts and NDT.

Work item 523 – USNS LUMMUS - Until such time as the actual scope of this work item can be clearly defined, we have allowed 15,000 shipyard hours of labor, $75,000 for direct material and $25,000 for sub-contractor to include lifts and NDT.

Work Item 555 - Until such time as the actual scope of this work item can be clearly defined, we have allowed 10,000 shipyard hours of labor, $50,000 for direct material and $20,000 for sub-contractor to include lifts, rental equipment and NDT.

9/5/18

# Exhibit A

USNS LUMMUS

9.      Where references or information was not provided that is required to accomplish the work, we reserve the right to review our proposal upon receipt of the information.  Work items affected by this statement are 505, 506, 542 as a minimum.

10.     Work Item 025 - Without an extensive review of the existing conditions of the vessel upon arrival at the shipyard, there are many unknown variables associated with this work item.  We would be happy to discuss this further with you at your convenience.

A key challenge in the performance of the inclining experiment is the unknown arrival condition of the ship in terms of how much "non-lightship" weights or cargo it is going to have. The aggregate sum of items to add or deduct from the survey ship must be less than 2% of the lightship weight. If it exceeds this, then we will need to either offload the items from the ship, or weigh the items with a calibrated scale to the satisfaction of the ABS surveyor or obtain documentation of the weight from a manufacturer's document or shipping label.

For these ships, it could amount to hundreds or even thousands of items. It is unknown at this point.
In the case of the USNS BUTTON or USNS LUMMUS, since the ship has been in service for so long, we expect to find a long list of items that will need to be on the deduct list, such as spares, old parts, drums and pallets of material, consumables, bar stock, shapes, etc.

Another challenge will be finalizing the survey list while the shipyard is still performing work. There is no easy solution to this.  As well the shipyard will need to be finished with all work and have all materials removed prior to the survey being conducted with MSC and ABS.

The labor cost estimate for this work item is based on the ship meeting the total aggregate sum requirement of no more than 2% of estimated lightship (items to be deducted or added, less contents of tanks).  ABS stability group services are required and are not included.  No tank filling, emptying, cleaning, gas freeing is specifically included.  No responsibility for frozen and refrigerated stores is included.

In the case of paragraph 7.15, we have no control over weather conditions and therefore any cancellation or postponement of the stability test shall not cause the shipyard to be responsible for costs arising from the cancellation.

11.     Work Item 301 - For purposes of this bid proposal, we have not included any berthing or food or transportation for the crew.  If it is determined that these are needed, CGS has documentation of the allowed rates and we would handle the cost as a material issue with an 18% mark-up if we are required to pay the costs.

12.     Work Item 538 - The OEM, Aqua-Chem recommends against replacing tubes unless they are in the outer row as good tubes would be required to be cut out to get to inner row tubes, as required by paragraph 7.3.5.1.
Therefore our bid proposal does not include tube renewals.

13.     Work Item 910 - The Tate Temco valve listed in the work item has a 16-18 week lead time.  We recommend that CGS consider purchasing the valve now.



# Exhibit A

**ANNEX "A" (SPECIFICATION)**
**BIMCO STANDARD SHIP REPAIR CONTRACT**
**CODE NAME: REPAIRCON**

*Note: Annex "A" will either be the front sheet to whatever detailed technical specification has been developed and agreed between the Parties, or will be a list identifying by date and description the various documents and correspondence exchanged between the Parties which together comprise the Specification.*

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**Exhibit A**

**ANNEX "B" (WORK VARIATION FORM CHANGE ORDER FORM)**
**BIMCO STANDARD SHIP REPAIR CONTRACT**
**CODE NAME: REPAIRCON**

| Vessel's Name:<br>**USNS LUMMUS, MMC - 12** | WVF COF No.: | Date issued for Signature: |
|---|---|---|
| Description of Additional Works/Reductions: | | |
| (a) Adjustment to Contract Price: | (b) Time for payment of Adjustment | (c) Adjustment to Contract Period |
| | | |

| For Contractors | For Owners |
|---|---|
| Name:                          Date: | Name:                          Date: |
| Signature: | Signature: |

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**Exhibit A**

**ANNEX "C" (TARIFF RATES)**
**BIMCO STANDARD SHIP REPAIR CONTRACT**
**CODE NAME: REPAIRCON**

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**Exhibit A**

**PART II**
## REPAIRCON Standard Ship Repair Contract

**1.    Definitions**                                                               1

*"Additional Works"* means all work, if any, in addition to        2
or modification of the Specification Works (including any           3
changes required by changes in the rules of the Owners'            4
regulatory bodies after the date of the Contract), which           5
are to be described on a ~~Work Variation~~ **Change Order** Form attached    6
as Annex "B" hereto.                                               7
**"CGS Contracting Officer" means the person in CGS contracting**
**department with the authority to administer this Contract.  For the**
**avoidance of doubt CGS Contracting Officer does not mean Owners'**
**Representative(s).**
*"Completion"* means the completion of the Works.                  8
*"Contract Period"* means the period (commencing on                9
the first working day after the date of delivery) agreed          10
between the Parties as stated in Box 6 for the                     11
performance of the Specification as may be amended                 12
as a consequence of Additional Works and/or                       13
Reductions and/or pursuant to Clause 8 (Disruptions).             14
*"Contract Price"* means the agreed price for the                  15
Specification Works as stated in Box 10, as may be                16
adjusted by the value of any Additional Works less any            17
Reductions.                                                        18
*"Contractors"* means the company stated in Box 3.                19
*"Contractors' Yard"* means the premises of the                    20
Contractors stated in Box 5.                                       21
*"Delivery"* means delivery of the Vessel to the                   22
Contractors at the Contractors' Yard or elsewhere as              23
may have been agreed between the Parties.                          24
*"Owners"* means the Owner stated in Box 2.                        25
**"Owners' Representative(s)" means the Owners' Representative(s)**
**stated in Box 12.**
*"Parties"* means the Owners and the Contractors.                  26
**"Prime Contractor" means the contractor under Prime Contract No.**
**[insert prime contract no.]**.
*"Redelivery"* means redelivery of the Vessel to the               27
Owners at the Contractors' Yard or elsewhere as may               28
have been agreed between the Parties.                              29
*"Reductions"* means all deletions, if any, to the                 30
Specification Works, which are to be recorded on a Work           31
Variation Form.                                                    32
*"Specification Works"* means the work to be carried out           33
under this Contract described in the Specification                 34
attached as Annex "A" hereto.                                      35
*"Sub-contractors"* means all persons engaged by the              36
Contractors to do work, supply materials or equipment,            37
or provide accommodation or services in connection                38
with the Works.                                                    39
*"Tariff"* means the rates agreed, if any, in Annex "C"           40
attached hereto.                                                   41
*"Vessel"* means the vessel described in Boxes 4 and 7.           42
*"Works"* means the Specification Works, as may be                43
amended by any Additional Works and/or Reductions.                44

**2.    Performance and Approval of the Work**                    45
**(a)**      Performance of Works                                  46

(i)     The Contractors shall perform the Works in accord-   47
         ance with the provisions of this Contract, the require-   48
         ments of the Parties' regulatory bodies, and to the       49
         reasonable satisfaction of the Owners **and Owners**     50
         **Representative(s) which does not limit the**
         **Contractors obligation to perform in accordance**
         **with the Works.**~~.~~
(ii)    The Works shall be performed in accordance with      51

best local practice and, unless otherwise agreed,             52
within normal working hours.  **The Contractor shall be**      53
**responsible for all cost and expenses necessary for**
**the completion of the Works.** Any overtime carried
out by the Contractors to complete the Works within          54
the Contract Period shall be for their account, but          55
any overtime carried out at the Owners' written              56
request shall be subject to extra cost as stated in          57
Box 11.                                                       58
(iii)   **Contract Period begins and ends on the dates stated**
        **in Box 6.  The Contract Period ends at the same local**
        **time as the first day in which performance began at**
        **the start of the Contract Period.**
(iv~~ii~~)  The Contractors shall make all reasonable endeav-   59
        ours to perform Additional Works as requested by      60
        the Owners and recorded in the **Change Order Form**~~e~~    61
        ~~Work Variation Form~~.
        The Contractors shall, wherever possible, perform     62
        Additional Works within the Contract Period stated    63
        in Box 6.  However, where the Parties agree that      64
        Additional Works will extend, or Reductions shorten,  65
        the Contract Period, the increase or decrease in      66
        Duration  shall be recorded on a **Change Order**      67
        **Form**~~Work Variation Form~~
        and the Redelivery Termination Date will auto-        68
        Matically be extended or shortened by the same        69
        period.                                                70
(iv)    **The Owners Representative(s) may through written**    71
        **order make changes to the Works at any time**
        **without notice to the Contract.** In the event of
        Additional Works or Reductions,
        the Contract Price shall be adjusted by agreement     72
        Between the Parties and recorded on a **Change Order**  73
        **Form** ~~Work Variation~~
        ~~Form~~, Where the Parties agree to Reductions, the   74
        Owners shall be credited with the equivalent of the   75
        cost saved as a result of such Reductions (see also   76
        Clause 5(a) Price).  **Contractor shall not receive**  77
        **compensation for additional repairs not specified in**
        **the Works unless the additional repairs and**
        **compensation were approved in writing by the**
        **Owners Representative(s) and accepted and signed**
        **by the Contractors prior to the commencement of**
        **the additional repairs.**
(vi)    Should any of the specified materials or equipment    78
        not be available at the time required for use in the  79
        Vessel, the Contractors shall have the right to use   80
        other suitable materials or equipment of equivalent   81
        Standard in replacement thereof, subject to the       82
        agreement of the Classification Society and the       83
        Owners, the latter's consent not to be unreasonably   84
        Withheld.                                             85
        **(vii) Except as specified in this Clause 2(a)(vii), no**
        **order, statement, or conduct of CGS or Government**
        **personnel who visits the Contractor's Yard or in any**
        **other manner communicates with the Contractor's**
        **personnel during the performance of the Contract**
        **shall consitute a change under this Contract.  The**
        **Contractor shall not comply with any order,**
        **direction, or request of personnel unless it is issued**
        **in writing and signed by the CGS Contracting**
        **Officer, or is pursuant to specific authority otherwise**
        **included as part of this Contract.  The CGS**
        **Contracting Officer is the only person authorized to**
        **approve changes in any of the requirements of this**
        **Contract and notwithstanding provisions contained**
        **elsewhere in this Contract, the said authority**
        **remains solely the CGS Contracting Officer's.  In the**
        **event the Contractor effects any change at the**
        **direction of any person other than the CGS**
        **Contracting Officer, the change will be considered to**
        **have been made without authority and no**
        **adjustment will be made in the Contract Price to**
        **cover any increase in charges incurred as a result**
        **thereof.**

This document is a computer generated  REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Exhibit A

**PART II**
**REPAIRCON Standard Ship Repair Contract**

**(b)** Contractors' right to sub-contract 86
Su-bject to the Owners' right to object on reasonable 87
grounds, the Contractors shall have the right to employ 88
sub-contactors to perform any works provided that the 89
Contractors remain responsible for all of their sub- 90
contractors' actions. 91
In the event of such a sub-contract the Contractors shall 92
remain liable for the due performance of their obligations 93
under this Contract. 94

**(c)** Approvals and Certificates 95
(i)   The Contractors shall be responsible for obtaining 96
and maintaining all necessary approvals and 97
certificates of whatsoever nature relating to the 98
Works as required by the Contractors' regulatory 99
bodies. The Owners shall provide any reasonable 100
assistance that may be required in this respect. 101
(ii)  The Owners shall be responsible for obtaining and 102
maintaining any approvals or certificates relating to 103
the Vessel and the Works as required by the Owners' 104
regulatory bodies.  The Contractors shall provide any 105
reasonable assistance that may be required in this 106
respect. 107

**3.**  **Supervision and Owners' Work** 108
**(a)** Owners' Representatives 109
(i)   The supervision of the Works shall be carried out by 110
the Owners' Representative(s) as stated in Box 12 or 111
such other person(s) as the Owners may from time 112
to time appoint and notify to the Contractors in writing. 113
The Owners shall have at least one representative 114
present at the Contractors' Yard throughout the Works. 115
The Owners' Representative(s) shall be authorised 116
to act on behalf of the Owners in respect of all matters 117
relating to the Contract, including but not limited to 118
the approval of plans, drawings, calculations, and 119
documents, and agreeing and signing Change Order 120
~~Work Variation~~ 
Forms and invoices. 121
(ii)  The Owners' Representative(s) shall at all times 122
provide reasonable assistance to facilitate timely and 123
efficient completion of the Works. 124
(iii) The Vessel's Master shall be the Owners' Represen- 125
tative unless stated otherwise in Box 12. 126
**(iv)  The Owners Representative(s) have the right to hire** 
**Sub-contractors to perform work not within the** 
**Works.** 
(v~~iv~~) The Contractors shall, at their own expense, pro- 127
vide the Owners' Representative(s) with reasonable 128
office accommodation and facilities (including com- 129
munication facilities) as the Owners may reasonably 130
require, provided the Owners shall bear the costs of 131
all such communication expenses. 132
**(vi)** The Contractors shall grant the Owners' Repre- 133
sentative(s) reasonable access to the Contractors' 134
workshops whenever work on the Vessel or parts of 135
the Vessel is being carried out and shall ensure such 136
reasonable access to any other premises or site 137
where work is being carried out in connection with 138
the Vessel. **The Owners Representative(s) and its** 139
**agents shall have the right to use photographic** 
**equipment on the Vessel without restriction.** 

**(b)** Owners' Work 140
Subject to prior written agreement with the Contractors, 141
whose consent shall not be unreasonably withheld, the 142
Owners, or the Master and crew, or any sub-contractor 143
employed or engaged by the Owners, shall be entitled 144
to carry out the Owners' own work on the Vessel, 145
provided the Owners remain responsible for all of their 146
actions and such work does not interfere with or delay 147
the Works. 148

**4.**  **Delivery, Redelivery and Acceptance of the Vessel** 149

**(a)**   Delivery 150

(i)   The Vessel shall be delivered at a safe place 151
nominated by the Contractors on-the-Delivery Date 152
stated in Box 8, safely afloat and, unless otherwise 153
agreed, gas free and/or inerted, free of cargo, slops, 154
sludge, dirty ballast and of any substances in the 155
structure of the Vessel in way of the Works which 156
are dangerous or harmful to health.  **The Contractor** 157
**prior to performing the Works shall conduct tests**
**carried out by a Certified Marine Chemist to show**
**that the Vessel is free of dangerous and explosive**
**gases. The Contractor shall provide the Owners**
**Representative(s) with certified copies produced by**
**the inspecting Certified Marine Chemist showing**
**that the Vessel is free of dangerous and explosive**
**gases.** 
**(ii)  The Owners Representative(s) shall deliver the**
**Vessel to a safe place agreed upon by the Parties.**
**The Contractor shall provide tugs, pilots, docking**
**master, line handlers, and other things necessary to**
**move the Vessel into the pier or drydock. The**
**Contractor shall provide tugs and pilots necessary**
**for Redelivery of the Vessel. The Contractor shall**
**provide tugs and pilots necessary to shift the Vessel**
**within the Contractor's Yard during the Contract**
**Period.** 
(iii) The Owners shall keep the Contractors promptly 158
advised of any changes to the Vessel's Delivery Date. 159
**(iv)  The Vessel shall be drydocked within the first forty-**
**eight hours of the Contract Period at a safe place**
**agreed upon by the Parties.** 
(i~~i~~v) A Protocol of Delivery shall be signed by the Parties 160
hereto confirming the time of Delivery. 161

**(b)** Cancellation 162
(i)   Contractors' Cancellation 163

If, for any reason, the Vessel is not delivered to the 164
Contractors on or before 1500 hours local time on 165
the Cancellation Date stated in Box 9, the Contractors 166
shall have the right, exercisable no later than 1700 167
hours local time the same day, to cancel this Contract 168
and to recover any costs and expenses which they 169
have reasonably incurred in the performance of the 170
Contract up to the date of cancellation (including sums 171
payable to Sub-contractors provided they were 172
incurred with the Owners' prior written agreement) to 173
the extent that such sums are not otherwise excluded 174
under this Contract, and thereafter the Parties' 175
obligations under this Contract shall be at an end. 176

(ii)  Owners' Cancellation 177

If, for any reason, the Contractors fail to commence 178
the Works in accordance with the Specification within 179
48 hours of the date on which the Vessel is delivered 180
in the condition stipulated in Clause 4(a)(i) (Delivery), 181
the Owners shall have the right to cancel this Con- 182
tract within 24 hours, whereupon the Owners shall 183
be entitled to demand immediate redelivery of the 184
Vessel without compensation to the Contractors, and 185
to recover (A) any sums already paid to the Contrac- 186
tors together with interest at the rate stated in Box 187
17, and (B) all other expenses which the Owners have 188
reasonably incurred in connection with this Contract, 189
to the extent that those sums are not otherwise ex- 190
cluded under this Contract, but in any event exclud- 191
ing the Owners' cost of taking the Vessel to the Con- 192
tractors' Yard, and thereafter the Parties' obligations 193
under this Contract shall be at an end. 194

**(c)** Redelivery 195
(i)   Redelivery of the Vessel to the Owners shall take 196
place within the Contract Period. 197
(ii)  Without prejudice to Clause 7 (Guarantee), such 198
inspections, tests and/or trials as are necessary for 199
the purpose of determining whether the Vessel at 200
Redelivery complies with the terms of this Contract 201
shall be carried out prior to Redelivery in the presence 202

This document is a computer generated  REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-
printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result
of discrepancies between the original BIMCO approved document and this computer generated document.

**Exhibit A**

**PART II**
**REPAIRCON Standard Ship Repair Contract**

of the Owners' Representative(s). The Contractors 203
shall keep the Owners advised of progress and the 204
expected dates for Redelivery and Completion. 205

(iii) Defects and defaults in the performance of the 206
Works, shall be listed in a protocol prepared by the 207
Parties, The Contractors shall at their cost rectify 208
any such defects and defaults before Redelivery, 209
unless the Owners can agree that completion of 210
certain of the Works can take place after Redelivery. 211

(iv) Without prejudice to the provisions of Clause 7 212
(Guarantee), at the date of Redelivery a Protocol of 213
Redelivery and Acceptance shall be signed between 214
the Parties which shall identify any Works to be 215
completed after Redelivery. 216

**5. Financial Provisions** 217
(a) Price 218
(i) The Contract Price, as stated in Box 10, covers all items 219
in the Specification Works for which a fixed price has 220
been agreed. 221

(ii) Where a fixed price has not been quoted for any 222
item in the Specification Works and/or Additional 223
Works, the price shall be calculated by reference to 224
the agreed Tariff, or if there is no agreed Tariff, 225
reasonable rates applying in the location of the 226
Contractors' Yard. 227

(b) Payment 228
(i) The Contract Price shall be payable by the Owners 229
free of all taxes, bank charges, exchange control 230
regulations and in the currency stated in Box 14, in 231
accordance with the payment terms agreed in Box 232
14 or, if no such terms are agreed, at Redelivery. 233

(ii) Any part of the Contract Price due between 234
Redelivery and Completion shall be payable in 235
accordance with the payment terms agreed in Box 236
14 or, in the absence of such agreement, upon 237
Completion. 238

(iii) If the payment terms agreed in Box 14 require interim 239
payments prior to Redelivery and the Owners fail 240
to pay any such sums on the dates agreed, the Owners 241
shall pay interest at the rate stated in Box 17 on 242
such outstanding sums (including accrued interest) 243

*Invoices covering work done to the Vessel submitted by the Contractor shall be submitted to the Owners Representative(s) no more than every 14 days and will be submitted and payed for in accordance to SER 25.* In the event that such sums

(together with accrued interest) are not paid within 244
3 working days of their due date, the Contractors 245
shall have the right to suspend work on this Contract 246
without thereby incurring liability to the Owners until 247
payment of outstanding sums (including accrued 248
interest). The Contractors shall also have the right 249
to recover from the Owners all direct and indirect 250
costs arising from such suspension of work to the 251
extent not otherwise contractually excluded. 252

(iv) If the payment terms agreed in Box 14 require 253
payments to be made after Redelivery and the 254
Owners fail to make any such payments, the Owners 255
shall pay interest at the rate stated in Box 17 and, 256
failing payment of such outstanding sums (together 257
with accrued interest) within 3 working days of their 258
due date, any other payment instalments agreed to 259
be payable at any later date shall become due 260
immediately. 261

(c) Title to the Vessel 262
(i) Title to the Vessel shall remain at all times with the 263
Owners. 264

(ii) ~~Except as provided in Clause 5(c)(iii). T~~he Contractors 265
shall not permit nor suffer any lien to be created on 266
the Vessel as a consequence of their work or that of 267
the Sub-contractors. 268

(iii) ~~The Contractors shall be entitled to exercise a lien 269
on the Vessel for all sums due to the Contractors on 270
or before Redelivery.~~ 271

(d) Privity

*This Contract does not create privity between the Owners and the Contractor. The Contract does not have the authority to enter into contracts on behalf of the Owners or the Owners Representative(s), and Contractor is relying solely on the credit of CGS for payment. This Contract is strictly for Vessel repairs or alterations and does not create an agency agreement beyond ship repair. See also SER 21.*

**6. Liquidated Damages, Liabilities and Indemnities** 272
(a) Liquidated Damages 273
(i) In the event that Redelivery is delayed beyond the 274
Contract Period, the Contractors accept liability for 275
liquidated damages in the sums stated in Box 16 for 276
each day of delay, subject to any maximum amount 277
stated in Box 16, and subject always to the Contractors' 278
Total Liability as stated in Box 15(a), *The Liquidated damages 279
shall apply for each day delayed which will be a 24-hour period commencing at the time set for the completion of work or any extension including Saturdays, Sundays, and holidays.*

(ii) *In the event that the Contractor fails to drydock the Vessel within forty-eight hours of the Contract Period the Contractor shall pay to the Operator 3,500 dollars per day that dry-docking is delayed beyond the first 48-hours. See SER 28.*

(b) Liabilities 280
(i) Liability for Loss or Damage 281
(1) The Contractors shall only be liable to the 282
Owners under this Contract when proven loss 283
or damage has been caused by the negligence, 284
gross negligence or wilful default of the 285
Contractors or that of those for whom they are 286
responsible *see also Attachment "A" Part II a)(b).* 287

(2) Except in the event of prior cancellation or ter- 288
mination, the Contractors' liabilities arising out 289
of or in connection with this Contract of whatso- 290
ever nature and howsoever arising shall ceas 291
upon Redelivery or, if later, Completion, except 292
as provided in Clause 7 (Guarantee) and Clause 293
11(e) (Intellectual Property). 294

(3) ~~The Owners shall only be liable to the Contractors 295
under this Contract when proven loss or damage 296
has been caused by the negligence, gross 297
negligence or wilful default of the Owners or that 298
of those for whom they are responsible.~~ 299

(~~3~~4) Any tests, trials or movements of the Vessel shall 300
be at the Owners' sole risk and responsibility, and 301
the Contractors shall not be under any liability 302
whatsoever to the Owners for any loss, damage 303
or expense resulting from such tests, trials or 304
movements, unless caused by the intervention, 305
act or omission of the Contractors. 306

(~~4~~5) Except as provided in Clause 6(a) (Liquidated 307
Damages), in no circumstances shall either 308
party's liability to the other party include any sum 309
in respect of loss of hire, profit, use or business, 310
or any similar direct, indirect or consequential loss, 311
damage or expense arising out of or in connection 312
with this Contract. 313

(ii) Liability for Death or Personal Injury 314
~~Each party accepts responsibility and liability for the 315
death or personal injury of its own personnel, and 316
the personnel of those entities for whom they are 317
responsible under this Contract, irrespective of the 318
cause of death or personal injury, and whether or 319
not caused by the negligence or gross negligence 320
of the other party, or those entities for whom the 321
other party are responsible under this Contract. 322
Each party further agrees to indemnify and hold 323
harmless the other party, as regards both liability 324
and legal costs, in the event that the aforesaid 325
personnel or their dependants pursue claims for 326
death or personal injury against the party who is 327
not responsible for them under this Contract.~~ 328

(1)*The Contractor hereby indemnifies and holds*

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Exhibit A

**PART II**
**REPAIRCON Standard Ship Repair Contract**

harmless the Owner and its agencies and
instrumentalities, the Vessel, and the Owners
Representative(s), against all suits, actions, claims,
costs or demands including, without limitation, suits,
actions, claims, costs, or demands resulting from
death, personal injury and property damage arising out
of or in any way related to or resulting in whole or in
part from the fault, negligence, wrongful act, or
wrongful omission of the Contractor, his or their
servants, agents, or employees.  Contractor shall
provide the insurance coverages required under this
Contract see Attachment "A" Part II (d).
(2) Notwithstanding anything else contained in this
Contract, CGS shall not be responsible for loss of,
damage to, or any liability arising out of personal injury
or death of any Contractors' employee, Sub-Contractor
or damage to or loss of any property owned by any
employee or Sub-Contractor arising out of or in any
way connected with the performance of this Contract,
even if such loss, damage, injury or death is
caused wholly or partially by the act, neglect or default
of CGS, its agents or employees and even if such loss,
damage, liability, injury or death is caused wholly or
partially by the unseaworthiness of any vessel. The
Contractors shall indemnify, protect, defend and hold
harmless CGS from and against any and all claims,
cost, expenses, actions, proceedings, suits,
judgments, liens, demands and liabilities whatsoever
arising out of or in connection with such loss, damage,
personal injury or death.  If any statutory provision or
other operation of law prohibits enforcement of this
indemnity, it shall be valid to the extent it has not been
void.

(iii)  ~~Third Parties~~  Third Parties                                          329
  ~~(1)~~  ~~Each party agrees to indemnify the other party~~            330
    ~~against all claims made against the other party~~               331
    ~~by third parties (being those individuals and~~                 332
    ~~entities for whom neither party is responsible~~                333
    ~~under this Contract) in any way related to this~~              334
    ~~Contract, where such claims are caused by, or to~~              335
    ~~the extent that they are contributed to by the~~               336
    ~~indemnifying party's negligence, gross negligence~~             337
    ~~or wilful default or that of those for whom it is~~             338
    ~~responsible under the terms of this Contract.~~                 339
    **(1) Attachment "A" Part II (c) shall apply.**
  ~~(2)~~  ~~The indemnifying party shall bear the expense of~~          340
    ~~investigations and defences of all claims against~~            341
    ~~which the other party is indemnified under sub-~~               342
    ~~clause (1) above and all lawsuits arising therefrom~~           343
    ~~including the legal costs of the indemnified party.~~           344
(iv)  Contractual Limitation                                              345
  (1)  Except as provided in Clause 7 (Guarantee) and            346
    **Attachment "A" Part II,** the
    Contractors' liability arising out of or in connection         347
    with this Contract shall be limited to the Contractors'         348
    Total Liability as stated in Box 15(a).                         349
  (2)  The Owners' liability arising out of or in connection      350
    with this Contract shall be limited to the Owners'              351
    Total Liability as stated in Box 15(b).                         352
(v)  Employees, Servants, Agents and Sub-contractors                     353
  The limitations on each party's liability in this Clause        354
  6(b) (Liabilities) shall also apply to the liability of those   355
  for whom that party is responsible under this Contract.         356
  Each party further agrees that it will not, and will            357
  ensure that those for whom it is responsible do not,            358
  circumvent the aforesaid limitations and allocation of          359
  responsibility by taking legal proceedings against the          360
  employees, servants or agents of the other party, and          361
  to this extent each party shall be deemed to be acting          362
  as agent or trustee on behalf of and for the benefit of         363
  all such persons.                                               364

(c)  Limitation                                                          365
  Nothing herein contained shall affect any right that the        366
  Parties may have to limit their liability under any statutory    367

enactment for the time being in force.                                   368

7.  **Guarantee**                                                        369
(a)  The guarantee shall apply to the Works performed              370
  and materials supplied by the Contractors and, for             371
  avoidance of doubt, by the Sub-contractors.                     372
(b)  Pursuant to the guarantee, the Contractors shall             373
  responsible for repairing defects in materials, equipment      374
  and workmanship existing at the time of Redelivery or, if      375
  later, Completion, provided always that notice of complaint    376
  in respect of such defects is received in writing by the       377
  Contractors within the number of months stated in Box          378
  13 from the date of Completion.                                 379
(c)  If the defect has led to damage to the Vessel or any         380
  part thereof, the repair obligation shall extend to repair     381
  or renewal of the Vessel's part(s) that have been              382
  damaged as a direct ~~consequence~~ result of the defect.       383
(d)  In cases where the Contractors are liable for defects        384
  as provided in this Clause 7, the Owners shall be entitled     385
  to have the work and the replacements carried out at           386
  any yard or workshop, other than the Contractors' if, in       387
  the reasonable opinion of the Owners, such work and            388
  the replacements need to be effected promptly and it is        389
  not practicable or cost effective for the Owners to bring      390
  the Vessel to the Contractors' Yard.  The Contractors'         391
  liability in such cases shall solely be to pay directly or     392
  reimburse the actual cost which if performed at Contractor's    393
  Yard would have been incurred for such work and the
  replacements provided always that before committing the        394
  Vessel to another yard or workshop the Owners shall:           395
  (i)  Notify the Contractors of their intention to do so and    396
    request such assistance as the Contractor may be              397
    able to offer in order to minimise the cost;                   398
  (ii)  Use reasonable endeavours to ensure that the cost        399
    does not exceed the cost of having the same work               400
    carried out at the Contractors' Yard.                          401
(e)  In any case the Vessel may be taken at the Owners'           402
  cost and responsibility to the place elected, ready in all     403
  respects for the guarantee work to be commenced.               404
(f)  When repairs or renewals are performed by the                405
  Contractors pursuant to this Clause 7, the Contractors         406
  shall guarantee such repairs or renewals on the same           407
  terms as this Clause 7.                                         408

8.  **Disruptions**                                                      409
(a)  The Contract Period shall be extended when any of            410
  the following events cause delay to the Contractors'           411
  performance of the Works, provided always that the             412
  Contractors shall have complied with Clause 8(b)               413
  hereunder and shall have made all reasonable efforts           414
  to avoid or minimise the effects such events may have          415
  on the performance of the Works:                               416
  (i)  Force Majeure events                                       417
    (1)  acts of God;                                           418
    (2)  any Government requisition, control, interven-         419
      tion, requirement or interference;                          420
    (3)  any circumstances arising out of war, threatened       421
      act of war or warlike operations, acts of terrorists        422
      or the consequences thereof;                                423
    (4)  riots, civil commotions, blockades or embargoes;       424
    (5)  epidemics;                                              425
    (6)  earthquakes, landslides, floods or other               426
      extraordinary weather conditions;                           427
    (7)  strikes, lockouts or other industrial action, but      428
      only if of a general nature and not limited to              429
      the Contractors and/or the Sub-contractors;                 430
    (8)  fire, accident, explosion (whether in the Con-         431
      tractors' Yard or elsewhere) except where                   432
      caused by the proven negligence of the Con-                 433
      tractors and/or the Sub-contractors.                        434
  (ii)  Other events                                              435
    (1)  failure of the Owners and/or Owners' regulatory        436
      bodies to review/approve technical information              437
      within a reasonable time;                                   438
    (2)  suspension of the Works pursuant to Clause             439

This document is a computer generated  REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**Exhibit A**

**PART II**
**REPAIRCON Standard Ship Repair Contract**

5(b)(iii) (Payment); | 440

(3) failure of the Owners to deliver the Vessel in | 441
the condition stipulated in Clause 4(a)(i) | 442
(Delivery); | 443

(4) breach of Clause 3(a)(iii) (Owners' Repre- | 444
sentatives); | 445

(5) disruption of the Works in breach of Clause 3(b) | 446
(Owners' Work); | 447

(6) late delivery of any items to be supplied by the | 448
Owners. | 449

**(b)** The Contractors shall notify the Owners in writing | 450
within 2 working days of the occurrence of any event of | 451
delay, on account of which the Contractors assert that | 452
they are entitled to claim an extension of the Contract | 453
Period. A failure to so notify shall bar the Contractors | 454
from claiming any extension of the Contract Period. The | 455
Contractors shall also advise the Owners in writing (A) | 456
within 2 working days of the ending of any event notified | 457
under this clause that have ended, and (B) as | 458
Soon as reasonably possible after (A), the length of | 459
extension of the Contract Period claimed by the | 460
Contractors. | 461

**9. Termination** | 462

**(a)** Contractors' Default | 463
The Owners shall be entitled to terminate the Contract | 464
by notice in writing to the Contractors in the event that: | 465
(i) the Contractors are deemed insolvent pursuant to | 466
Clause 9(c) (Deemed Insolvency); or | 467
(ii) ~~without lawful excuse, the Contractors (A) fail to~~ | 468

~~perform the Works or any substantial part of them~~ | 469
~~for a running period of at least 5 days, provided that~~ | 470
~~thereafter the Owners give the Contractors at least~~ | 471
~~2 days written notice of their intention to terminate~~ | 472
~~under this Clause 9(a), and within that period the~~ | 473
~~Contractors fail to remedy their breach, or (B) clearly~~ | 474
~~indicate their intention not to perform the Contract;~~ | 475
~~or~~ | 476

**Without lawful excuse, the Contractor fails to perform**
**the Works or any substantial part of them within the**
**Contract Period or any extension, or fail to perform the**
**Contract in accordance with the Works. The Owners**
**Representative(s) may terminate the Contract by**
**providing written notice of intention to terminate under**
**this Clause 9(a).**

(iii) the Contractors fail to redeliver the Vessel in the | 477
condition required by the Redelivery | 478
Termination Date stated in Box 19 (if any), as may | 479
be adjusted pursuant to Clauses 2(a)(iii) and 8(a)(ii) | 480
(Other events); or | 481
(iv) there is damage to the Vessel in the course of the | 482
Works for which the Contractors are liable under the | 483
terms of the Contract and the reasonable estimated | 484
cost of repairing such damage exceeds the Con- | 485
tractors' Total Liability. | 486
Thereupon the Owners shall be obliged to pay any part of | 487
the Contract Price that relates to the Works performed up | 488
to the date of termination. However, the Owners shall be | 489
entitled to set-off against which payment (A) any sums | 490
payable pursuant to Clause 6(a), and (B) any losses and/ | 491
or claims not otherwise excluded which they may suffer by | 492
reason of the termination. To the extent that (A) and (B) | 493
exceed the Contractors' Total Liability, the Owners shall be | 494
discharged from their obligation to pay an equivalent sum | 495
out of any unpaid part of the Contract Price. Thereafter, | 496
notwithstanding the provisions of Clause 5(c)(iii), the | 497
Owners shall have the right to remove the Vessel from | 498
the Contractors' Yard without hindrance or interference | 499
by the Contractors or those for whom they are | 500
responsible. | 501

**(b)** Owners' Default | 502
The Contractors shall be entitled to terminate the | 503
Contract by notice in writing to the Owners in the event | 504
that: | 505
(i) the Owners are deemed insolvent pursuant to | 506

Clause 9(c) (Deemed Insolvency); or | 507
(ii) without lawful excuse, the Owners (A) fail to pay any | 508
sums due under the Contract for a period of 5 days | 509
provided that thereafter the Contractors give the | 510
Owners at least 2 days written notice of their intention | 511
to terminate under this Clause 9(b), and within that | 512
period Owners fail to remedy the breach, or (B) | 513
clearly indicate their intention not to perform the | 514
Contract; or | 515
(iii) there is damage to the Contractors' property in the | 516
course of the Works for which the Owners are liable | 517
under the terms of the Contract and the reasonably | 518
estimated cost of repairing the damage exceeds the | 519
Owners' Total Liability. | 520
Thereupon the Contractors shall be entitled to recover | 521
any unpaid part of the Contract Price that relates to the | 522
Works performed up to the date of termination, together | 523
with (A) any losses they may suffer, or liability to Sub- | 524
contractors and others they may incur, by reason of the | 525
termination except as otherwise excluded, and (B), | 526
pending payment of (A), their reasonable costs of | 527
accommodating the Vessel, but (A) and (B) being subject | 528
always to Owners' Total Liability. | 529

**(c)** Deemed Insolvency | 530
Either party shall be deemed insolvent (the "Insolvent | 531
Party") if it (A) makes any voluntary arrangement with | 532
its creditors or becomes subject to an administration | 533

order or goes into liquidation (otherwise than for the | 534
purposes of amalgamation or reconstruction); or (B) an | 535
encumbrancer takes possession of, or a receiver is | 536
appointed in respect of any of the Insolvent Party's | 537
property or assets; or (C) the other party reasonably | 538
apprehends that any of the events mentioned in (A) or | 539
(B) above is about to occur in relation to the Insolvent | 540
Party and, after notification to the Insolvent Party is not | 541
reasonably satisfied as to its continuing creditworthiness | 542
and/or is not provided with suitable guarantees. | 543

**(d)** **Notwithstanding anything otherwise in this Clause 9, nothing**
**in this Clause 9 shall prejudice Owners' or U.S. Government's**
**rights under FAR 52.249-2.**

**10. Insurance** | 544
**(a)** ~~Contractors' Insurances~~ | 545
~~The Contractors shall effect and maintain, at no cost to~~ | 546
~~the Owners, ship repairers liability insurance providing~~ | 547
~~coverage for such loss and damage for which the~~ | 548
~~Contractors may be held liable to the Owners under~~ | 549
~~this Contract and shall, at the Owners' request, make~~ | 550
~~immediately available to the Owners copies of insurance~~ | 551
~~policies to provide evidence and details of cover.~~ | 552
**(b)** ~~Owners' Insurances~~ | 553
~~The Owners shall effect and maintain, at no cost to the~~ | 554
~~Contractors, Protection and Indemnity Insurance, Hull~~ | 555
~~and Machinery Insurance and War Risks Insurance and~~ | 556
~~providing full coverage for such loss and damage for~~ | 557
~~which the Owners may be held liable to the Contractors~~ | 558
~~under this Contract and shall, at the Contractors' request~~ | 559
~~make immediately available to the Contractors copies~~ | 560
~~of insurance policies to provide evidence and details of~~ | 561
~~the cover.~~ | 562

**(a)** **Owners' Insurance**
**The Owners shall effect and maintain, at no cost to the**
**Contractors, Protection and Indemnity insurance, and War**
**Risk. At the Contractors request the Owners shall make**
**immediately available to the Contractors copies of insurance**
**policies to provide evidence and details of the cover.**
**Contractor's Insurances**
**Contractor, at its sole cost and expense (including the cost of**
**all deductibles), shall procure and maintain in force during**
**(b)** **the term of this Contract required by this Contract as stated**
**in Attachment "A" Part II d).**

**11. Sundry Provisions** | 563
**(a)** Assignment | 564
Neither party shall have the right to assign this Contract | 565

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as caused by the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused by the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply.

**Exhibit A**

**PART II**

**REPAIRCON Standard Ship Repair Contract**

or any rights thereunder to a third party without the | 566

written consent of the other party, which consent shall | 567
not be unreasonably withheld. | 568

**(b)** Severance | 569
If by reason of any enactment or judgment any provision | 570
of this Contract shall be deemed or held to be illegal, | 571
void or unenforceable in whole or in part, all other | 572
provisions of this Contract shall be unaffected thereby | 573
and shall remain in full force and effect. | 574

**(c)** No Waiver | 575
No failure or forbearance of either of the Parties to | 576
exercise any of their rights or remedies under this | 577
Contract shall constitute a waiver thereof or prevent the | 578
Parties from subsequently exercising any such rights | 579
or remedies in full. | 580

**(d)** Entire Agreement | 581
This Contract constitutes the entire agreement between | 582
the Parties and no promise, undertaking, representation, | 583
warranty or statement by either party prior to the date | 584
of this Contract shall affect the Contract nor shall any | 585
modification of this Contract be of any effect unless in | 586
writing signed by or on behalf of the Parties. | 587

**(e)** Intellectual Property | 588
(i)    The Contractors have ownership of drawings, casting | 589
       patterns, data regarding weights and volumes, | 590
       information regarding prices and any other data which | 591
       it has prepared or produced in connection with this | 592
       Contract.  The Owners may at all times use the same | 593
       in subsequent work on the Vessel or sister vessels. | 594
       Subject to payment of the copying expenses, the | 595
       Owners may require the Contractors to supply copies | 596
       of this material.  The Contractors may not make any | 597
       of this material available to third parties without the | 598
       prior written consent of the Owners, such consent | 599
       not to be unreasonably withheld where disclosure is | 600
       necessary for the completion of the Works. | 601
(ii)   The Owners shall ensure that the manufacturing | 602
       and/or supplying according to drawings, models or | 603
       other instructions supplied by them shall not infringe | 604
       any trade mark, patent or similar rights of third | 605
       parties. Should claims nevertheless be made against | 606
       the Contractors in this respect the Owners shall keep | 607
       the Contractors indemnified against the cost to the | 608
       Contractors of such claims, including any legal costs | 609
       incurred by them in connection therewith. | 610
(iii)  Except as provided for in Clause 11(e)(ii), the | 611
       Contractors hereby agree to indemnify the Owners | 612
       against the cost to the Owners of any claims, | 613
       including legal costs incurred by the Owners in | 614
       connection therewith based on any alleged | 615
       infringement of trademarks, patents or any other | 616
       protected rights, arising out of or in any way related | 617
       to the Contractors' performance of the Works. | 618

**(f)** Unused Materials ~~Scrap Materials~~ | 619
~~Scrap metal materials removed from the Vessel pursuant~~ | 620
~~to the Works shall become the Contractors' property~~ | 621
~~except for propellors, tailshafts and heavy machinery~~ | 622
~~parts.~~ | 623
**Unused materials shall be removed from the Vessel pursuant** | 
**to SER 09 and will remain the property of the Owners.** | 
**Unused materials shall be designated as Owners property by** | 
**Owners Representative(s) as stated in Box 12 in accordance** | 
**to SER 09.** | 

**(g)** Headings | 
**The headings to the clauses and appendices to this** | 
**Agreement are for convenience only and shall not affect its** | 
**construction or interpretation.** | 

**(h)** Warranty of Authority | 
**The Contractors and the Owners each warrant and represent** | 
**that the person whose signature appears in Part I above is its** | 
**representative and is duly authorized toexecute this** | 
**Agreement as a binding commitment of such party.** | 

**(i)** Modifications | 
**No modification of this Agreement shall be valid unless such** | 
**modification is in writing and signed by the parties hereto.** | 

**12.** ~~BIMCO Dispute Resolution Clause~~ | 624
**Law and Jurisdiction/Dispute Resolution** | 
***(a)*** ~~This Contract shall be governed by and construed~~ | 625
~~in accordance with English law and any dispute arising~~ | 626
~~out of or in connection with this Contract shall be referred~~ | 627
~~to arbitration in London in accordance with the~~ | 628
~~Arbitration Act 1996 or any statutory modification or re-~~ | 629
~~enactment thereof save to the extent necessary to give~~ | 630
~~effect to the provisions of this Clause.~~ | 631
~~The arbitration shall be conducted in accordance with~~ | 632
~~the London Maritime Arbitrators Association (LMAA)~~ | 633
~~Terms current at the time when the arbitration proceed-~~ | 634
~~ings are commenced.~~ | 635
~~The reference shall be to three arbitrators. A party~~ | 636
~~wishing to refer a dispute to arbitration shall appoint its~~ | 637
~~arbitrator and send notice of such appointment in writing~~ | 638
~~to the other party requiring the other party to appoint its~~ | 639
~~own arbitrator within 14 calendar days of that notice and~~ | 640
~~stating that it will appoint its arbitrator as sole arbitrator~~ | 641
~~unless the other party appoints its own arbitrator and~~ | 642
~~gives notice that it has done so within the 14 days~~ | 643
~~specified. If the other party does not appoint its own~~ | 644
~~arbitrator and give notice that it has done so within the~~ | 645
~~14 days specified, the party referring a dispute to~~ | 646
~~arbitration may, without the requirement of any further~~ | 647
~~prior notice to the other party, appoint its arbitrator as~~ | 648
~~sole arbitrator and shall advise the other party~~ | 649
~~accordingly. The award of a sole arbitrator shall be~~ | 650
~~binding on both parties as if he had been appointed by~~ | 651
~~agreement.~~ | 652
~~Nothing herein shall prevent the parties agreeing in~~ | 653
~~writing to vary these provisions to provide for the~~ | 654
~~appointment of a sole arbitrator.~~ | 655
~~In cases where neither the claim nor any counterclaim~~ | 656
~~exceeds the sum of US$50,000 (or such other sum as~~ | 657
~~the parties may agree) the arbitration shall be conducted~~ | 658
~~in accordance with the LMAA Small Claims Procedure~~ | 659
~~current at the time when the arbitration proceedings are~~ | 660
~~commenced.~~ | 661
**This Contract shall be governed by and construed in** | 
**accordance with Title 9 of the United States Code and the** | 
**general maritime law of the United States (and to the extend** | 
**inapplicable, interstitially, by the laws of the State of New** | 
**York, without regard to its choice of law and conflict of laws** | 
**rules), except that any provision in this Contract that is (i)** | 
**incorporated in full text or by reference from the Federal** | 
**Acquisition Regulations (FAR); or (ii) incorporated in full text** | 
**or by reference from any agency regulation that implements** | 
**or supplements the FAR; or (iii) that is substantially based on** | 
**any such agency regulation or FAR provision, shall be** | 
**construed and interpreted according to the federal common** | 
**law of government contracts as enunciated and applied by** | 
**federal judicial bodies, boards of contract appeals, and** | 
**quasi-judicial agencies of the federal Government.** | 

***(b)*** ~~This Contract shall be governed by and construed~~ | 662
~~in accordance with Title 9 of the United States Code~~ | 663
~~and the Maritime Law of the United States and any~~ | 664
~~dispute arising out of or in connection with this Contract~~ | 665
~~shall be referred to three persons at New York, one to~~ | 666
~~be appointed by each of the parties hereto, and the third~~ | 667
~~by the two so chosen; their decision or that of any two~~ | 668
~~of them shall be final, and for the purposes of enforcing~~ | 669
~~any award, judgement may be entered on an award by~~ | 670
~~any court of competent jurisdiction.  The proceedings~~ | 671
~~shall be conducted in accordance with the rules of the~~ | 672
~~Society of Maritime Arbitrators, Inc.~~ | 673
~~In cases where neither the claim nor any counterclaim~~ | 674
~~exceeds the sum of US$50,000 (or such other sum as~~ | 675
~~the parties may agree) the arbitration shall be conducted~~ | 676
~~in accordance with the Shortened Arbitration Procedure~~ | 677
~~of the Society of Maritime Arbitrators, Inc. current at the~~ | 678
~~time when the arbitration proceedings are commenced.~~ | 679
**Owners and Contractors agree to notify each other of** | 
**any claim, counterclaim, demand, cause of action, dispute, or** | 

This document is a computer generated REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification being made to the pre-
printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a
result of discrepancies between the original BIMCO approved document and this computer generated document.

Exhibit A

PART II
REPAIRCON Standard Ship Repair Contract

any other controversy arising out of or in any way relating to this Contract or to the subject matter of this Contract (each a Dispute), and to negotiate in good faith to resolve any such Dispute.

\* (c) ~~This Contract shall be governed by and construed~~ 680
~~in accordance with the laws of the place mutually agreed~~ 681
~~by the parties and any dispute arising out of in~~ 682
~~connection with this Contract shall be referred to~~ 683
~~arbitration at a mutually agreed place, subject to the~~ 684
~~procedures applicable there.~~ 685
**All Disputes which are not disposed of by mutual agreement in accordance with subparagraph (b) above within six (6) months may be decided by recourse to mediation, arbitration or an action at law, in equity or in admiralty in accordance with subparagraphs (d) and (e) below. Until final resolution of any such Dispute, Contractors shall diligently proceed with the performance of this Contract if so directed by Owners.**

(d) ~~Notwithstanding 12(a), 12(b) or 12(c) above, the~~ 686
~~parties may agree at any time to refer to mediation any~~ 687
~~difference and/or dispute arising out of or in connection~~ 688
~~with this Contract.~~ 689
~~In the case of a dispute in respect of which arbitration~~ 690
~~has been commenced under 12(a), 12(b) or 12(c) above,~~ 691
~~the following shall apply:~~ 692
(i) ~~Either party may at any time and from time to time~~ 693
~~elect to refer the dispute or part of the dispute to~~ 694
~~mediation by service on the other party of a written~~ 695
~~notice (the "Mediation Notice") calling on the other~~ 696
~~party to agree to mediation.~~ 697
(ii) ~~The other party shall thereupon within 14 calendar~~ 698
~~days of receipt of the Mediation Notice confirm that~~ 699
~~they agree to mediation, in which case the parties~~ 700
~~shall thereafter agree a mediator within a further 14~~ 701
~~calendar days, failing which on the application of~~ 702
~~either party a mediator will be appointed promptly by~~ 703
~~the Arbitration Tribunal ("the Tribunal") or such person~~ 704
~~as the Tribunal may designate for that purpose. The~~ 705
~~mediation shall be conducted in such place and in~~ 706
~~accordance with such procedure and on such terms~~ 707
~~as the parties may agree or, in the event of~~ 708
~~disagreement, as may be set by the mediator.~~ 709
(iii) ~~If the other party does not agree to mediate, that~~ 710
~~fact may be brought to the attention of the Tribunal~~ 711
~~and may be taken into account by the Tribunal when~~ 712
~~allocating the costs of the arbitration as between~~ 713
~~the parties.~~ 714
(iv) ~~The mediation shall not affect the right of either party~~ 715
~~to seek such relief or take such steps as it considers~~ 716
~~necessary to protect its interest.~~ 717
(v) ~~Either party may advise the Tribunal that they have~~ 718
~~agreed to mediation. The arbitration procedure shall~~ 719
~~continue during the conduct of the mediation but~~ 720
~~the Tribunal may take the mediation timetable into~~ 721
~~account when setting the timetable for steps in the~~ 722
~~arbitration.~~ 723
(vi) ~~Unless otherwise agreed or specified in the mediation~~ 724
~~terms, each party shall bear its own costs incurred~~ 725
~~in the mediation and the parties shall share equally~~ 726
~~the mediator's costs and expenses.~~ 727
(vii) ~~The mediation process shall be without prejudice~~ 728
~~and confidential and no information or documents~~ 729
~~disclosed during it shall be revealed to the Tribunal~~ 730
~~except to the extent that they are disclosable under~~ 731
~~the law and procedure governing the arbitration.~~ 732
~~(Note: The parties should be aware that the mediation~~ 733
~~process may not necessarily interrupt time limits.)~~ **With** 734
**respect to any Dispute involving the U. S. Government, or any of its subdivisions or agencies (the Government), arising out of or in any way relating to the terms, performance, conditions or interpretations of the Prime Contract, Contractors agree to be bound to Owners and the Government in the same manner and to the same extent as Owners are bound to the Government under the terms of the Prime Contract,**

including any and all litigation, arbitration, determinations, orders, judgements, and decisions authorized therein. In any such arbitration or other proceeding wherein the Government is a party, Contractors agree, at the request of Owners, to prepare and present Owners case, at Contractors expense, to the extent the proceedings relate to this Contract.

(e) ~~If~~ **Box 18 in Part I is not appropriately filled in, clause** 735
~~12(a) of this Clause shall apply. Clause 12(d) shall apply~~ 736
~~in all cases.~~ **Any other Disputes shall be resolved by** 737
**binding arbitration. A Dispute must be resolved through arbitration regardless of whether the Dispute involves claims that this Contract is non-arbitrable, unlawful, unenforceable, void, or voidable or involves claims under statutory, civil or common law. The validity, construction and interpretation of this agreement to arbitrate, and all other procedural aspects of the arbitration conducted pursuant hereto shall be decided by the arbitral tribunal. The arbitration shall be conducted under the arbitration rules (the Rules) of the Society of Maritime Arbitrators, Inc. (the SMA) and administered by the SMA. The arbitration shall be conducted by three neutral arbitrators. The claimant shall appoint an arbitrator with its demand for arbitration, and the respondent shall appoint an arbitrator with its answering statement. The two party-appointed arbitrators shall appoint a third arbitrator to chair the arbitration. If the party-appointed arbitrators are unable to agree upon a third arbitrator within 15 days of the appointment of the second arbitrator, or if a party does not appoint an arbitrator, then the remaining arbitrator(s) shall be appointed in accordance with the Rules. The arbitration shall be held in New York, New York and conducted in the English language. The award shall be final and binding and may be enforced by any court of competent jurisdiction. The parties agree that service of process may be accomplished in any enforcement action by using the notice provisions of this Contract or any other means authorized by law. The parties agree that the award may be enforced in any jurisdiction where the party against whom the award is sought to be enforced has assets that may be available to satisfy the award, and they waive any objections they may have to personal jurisdiction, venue or inconvenient forum for any action brought in those jurisdictions. The arbitral tribunal is authorized to award the costs of the arbitration, including reasonable costs and attorneys fees, to the prevailing party. The award shall include pre-judgment interest at the discretion of the arbitrators, and interest shall accrue until the date the award is paid in full. If a court enters judgment on an award, thereafter interest shall accrue at the statutory rate applicable to judgments entered by such court. Any arbitral award issued pursuant hereto may be enforced pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 or, if that Convention is not applicable, then pursuant to the Inter-American Convention on International Commercial Arbitration. Notwithstanding the foregoing, should one party fail or refuse to Arbitrate, the other shall have the right to file suit in the United States District Court of the Southern District of New York, located in Manhattan to seek legal redress.**

\* ~~Clauses 12(a), 12(b) and 12(c) are alternatives;~~ 738
~~indicate alternative agreed in Box 18.~~ 739

**13.** **BIMCO Notices Clause** 740
(a) All notices given by either party or their agents to 741
the other party or their agents in accordance with the 742
provisions of this Contract shall be in writing. 743
(b) For the purposes of this Contract, "in writing" shall 744
mean any method of legible communication. A notice 745

**Exhibit A**

PART II
REPAIRCON Standard Ship Repair Contract

| | | |
|---|---|---|
| may be given by any effective means including, but not | 746 | mail, or by personal service. |
| limited to, cable, telex, fax, e-mail, registered or recorded | 747 | |

This document is a computer generated  REPAIRCON form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

Exhibit A

Attachment A to BIMCO REPAIRCON dated 24 August 2018
By and between Crowley Government Services, Inc., Managers,
And Detyens Shipyards, Inc., Contractor

**Crowley Government Services, Inc. (CGS) Terms and Conditions for Drydocking**

- **PART I**:     CGS Commercial Procurement Clauses (SER)
- **PART II**:    Liability, Indemnity, and Contractor Insurance for Shipyards/Vessels
- **PART III**:   Terms and Conditions (Supplemental) - Environmental Handling, Transportation, and Disposal of Hazardous and Regulated Materials

**PART I:      Crowley Government Services, Inc. (CGS) Commercial Procurement Clauses (SER)**:

SER Clause Index:
SER 01 - CONTRACTOR STATUS/WORKMANSHIP
SER 02 - CONTRACTOR REMOVALS
SER 03 - COMMERCIAL MARINE PRACTICE
SER 04 - TANK CLEANING
SER 05 - OSHA/EPA REGULATIONS APPLICABLE
SER 06 - VESSEL CLOSURES IN DRYDOCK
SER 07 - CONTRACTOR USE OF SHIP'S FACILITIES
SER 08 - CONTRACTOR SAFETY RESPONSIBILITIES/LIABILITIES
SER 09 - OWNER'S SALVAGE/SCRAP RIGHTS
SER 10 - CONTRACTOR'S WARRANTEE
SER 11 - CHANGES, PRIOR AUTHORIZATION REQUIRED
SER 12 - FREE OF ALL CLAIMS, LIENS OR FINES
SER 13 - FINANCIAL CAPABILITY REQUIREMENT
SER 14 - INTELLECTUAL PROPERTY
SER 15 - FEDERAL, STATE AND LOCAL TAXES
SER 16 - NOTICE TO PROCEED/PERFORMANCE PERIOD
SER 17 - TIME EXTENSIONS/PERFORMANCE PERIOD
SER 18 – DRYDOCK FACILITY REQUIREMENTS
SER 19 - MASTER AGREEMENT CANCELLATIONS
SER 20 - CONFLICT OF CONTRACT TERMS
SER 21 - MARITIME LIENS
SER 22 - LIEN RELEASES
SER 23 – GOVERNMENT-REQUIRED CLAUSES
SER 24 - COMPLIANCE WITH EMPLOYMENT LAW
SER 25 - FINANCING/PAYMENT TERMS
SER 26 - SHIP DELIVERY/REDELIVERY
SER 27 – SHIPYARD/INDUSTRIAL ASSISTANCE CLAIMS CLAUSE
SER 28 - LIQUIDATED DAMAGES



SER 29 - RED LETTER CLAUSES; WAIVER; EFFECT
SER 30 - EQUAL EMPLOYMENT OPPORTUNITY


**SER 01 - CONTRACTOR STATUS/WORKMANSHIP**:  Except as otherwise provided in the Specifications, the Contractor, as an independent Contractor and not as an agent or employee of CGS or the Owner, shall furnish all labor, materials, supplies, equipment, facilities and services required to perform and fully complete, and shall perform and fully complete, all work covered by the Specifications to meet the requirements of the American Bureau of Shipping, the United States Coast Guard, and all United States governmental agencies or other regulatory agencies having jurisdiction in the premises and to the satisfaction of CGS or its representative, in order that the Vessel at the time of the completion of the Work may have the highest classification and rating for a vessel of its type by the American Bureau of Shipping, insofar as the classification and rating of the Vessel may be dependent upon the Work called for in the plans and Specifications and approved changes therein.  All workmanship and /or material shall be the best quality and in accordance with best commercial marine practices.  The Contractor may not be listed as Debarred, Suspended, or proposed for Debarment as published by the Department of the Treasury as posted at www.sam.gov.

**SER 02 - CONTRACTOR REMOVALS**:  If the removal or shifting of any parts of the Vessel or her fittings, appurtenances, stores, etc., is required for the carrying out of the Work covered by the Specifications, same shall be done by the Contractor and all such removals shall be subsequently replaced and any damage or loss resulting therefrom shall be made good by the Contractor at its sole expense, subject to the limitations stated in SERs 8 and 10 hereof.  Should any portion of the Vessel's structure, housing, fixtures, or equipment require alteration in order to carry out the Work covered by the Specifications, the Contractor shall make such alteration together with necessary replacement without additional cost to CGS.

**SER 03 - COMMERCIAL MARINE PRACTICE**:  The Contractor shall be responsible for and shall pay all expenses of shifting, dry docking, wharfage, towage, dockage, running lines, water testing and/ or refilling tanks and/or boilers, and/or disposal and removal of garbage and other such items to the extent the same are the Contractor's responsibility in accordance with normal commercial marine practice. Should the Work covered by the Specifications make it impracticable to use the Vessel's machinery and /or boiler plant for supplying steam and/or electric lighting, the Contractor shall supply such steam and/or electric lighting as may be necessary at no additional charge to CGS.  When the Work covered by the Specifications is performed at the Vessel's loading and/or discharging berth, the Contractor is relieved from responsibility for and the expense of the aforementioned items to the extent the same is CGS's responsibility in accordance with normal commercial marine practice.

Shifting and Towing (when applicable):  Contractor shall provide necessary tow preparation, towing gear, tugs, pilots, riding crew, and line handlers, plus all required equipment and permits to pick up the Vessel at its lay berth and deliver it to the Contractor's facility as a Dead Ship.  It shall be the Contractor's responsibility (not less than 48 hours prior to towing) to:

**Exhibit A**

1.) Obtain USCG load-line exemption and "Permit to Proceed";
2.) Obtain standard towing liability insurance, with appropriate deductible and limits; and
3.) Provide documents to the SM Port Engineer that verify that items (1) and (2) above have been completed, including a Certificate of Insurance in accordance with the Contract.

For all tows to and/or from Contractor's repair facility, Contractor shall retain an independent marine consultant recognized by Contractor's insurance carrier to provide recommendations for suitability for a tow trip, and Contractor shall comply with said recommendations.

All Vessel moves are for the Contractor's account. All disconnections and reconnections of services to the Vessel are for the Contractor's account. Contractor shall install shaft and rudder locks prior to each tow and provide warranty survey or certification where applicable. Upon the Vessel's return to the lay berth, Contractor shall restore to their original configuration any alterations to D/H System or weather closures required for each tow. The riding crew shall be equipped with three (3) portable radio transceivers of the same frequency, one to be stationed at the Vessel's bow, one at the stern, and one with an attendant alongside the pilot on the bridge.

The Contractor is responsible for coordination with the Port Authorities and the cognizant authority/-ies at any contemplated lay berth. Contractor shall provide tugs, pilots, and line handlers for all arrivals, departures, and as required to shift the Vessel for performance of the Work during the Contract Period to and from the dry dock. Contractor shall provide labor to handle lines and gangways for all moves.

**SER 04 - TANK CLEANING**: All tanks under alteration and/or repair shall be gas-freed, cleaned and/or washed and/or steamed by the Contractor as may be necessary before any work is done thereto and the oil or water tightness of the portion of the tanks affected by repairs shall be proven to the satisfaction of the American Bureau of Shipping and of CGS or its accredited representative. Contractor shall use the services of a Certified Marine Chemist to inspect all the tanks and confined areas on the Vessel, including all tanks, compartments and void spaces that are opened to be entered as a result of work and regulatory inspections of repairs. The Contractor shall furnish inspection prior to performance of work and provide CGS and the Master of the Vessel with copies of the certificates showing compartments of the Vessel to be free of explosive and dangerous gases. Contractor shall be responsible for additional cleaning if necessary to make the Vessel free of dangerous and explosive gases.

**SER 05 - OSHA/EPA REGULATIONS APPLICABLE**: The Contractor agrees to comply with all applicable safety, health and environmental regulations pertaining to ship repair during the entire performance period. (See SER 18 - Federal Contractual Requirements)

**SER 06 - VESSEL CLOSURES IN DRY DOCK**: While the Vessel is in dry dock, the Contractor shall be responsible for the proper closing of all openings in the Vessel's underwater body and shall keep the crew adequately informed of such; provided, however, that the Vessel's crew shall notify the Contractor prior to making any changes in openings, transfers of weights, or shifting of ballast.

**Exhibit A**

**SER 07 - CONTRACTOR USE OF SHIP'S FACILITIES**:  In case any of the Vessel's machinery, equipment or fittings, such as winches, pumps, rigging, pipe lines, etc., is used by the Contractor, the Contractor shall repair or replace any damaged machinery, equipment, or fittings resulting from such use, subject to the limitations stated in SER 8 and SER 10 of this Attachment A.

**SER 08 - CONTRACTOR SAFETY RESPONSIBILITIES/LIABILITIES**:

a.  The Contractor shall inspect all work areas and use its best efforts to prevent accidents, injury or damage to all employees, persons, and property in and about the Work covered by the Specifications and to the portion of the Vessel upon which the work is done. Contractor further agrees that through its foremen, supervisors, or other responsible representatives it will notify CGS at once if any condition is or creates an unsafe, dangerous, or improper place in which to work, and assume the responsibility for seeing that such condition is corrected before proceeding with the Work.  All equipment that presents a hazard or potential hazard to personnel shall have suitable protective devices installed.  These may be carrier guards or other approved devices and shall preclude personnel injury.  Examples of equipment requiring protective devices are those which contain exposed rotating parts, fan blades, belts, pulleys, flywheels, etc.

b.  ALL NEW MATERIAL MUST BE CERTIFIED ASBESTOS-FREE.  If a material containing asbestos is inadvertently identified on a Contract Guidance Drawing or other document, it shall be the Contractor's responsibility nevertheless to substitute an otherwise equivalent non-asbestos-containing material.   Contractor is responsible for all costs associated with the provision of asbestos-free material, whether or not provided for in the Specifications.

c.  The Contractor assumes all the risks of, and shall be responsible for, any and all damage or injury (including death) to persons or property caused by the negligence of the Contractor, its Subcontractors, their respective agents, employees, and any other persons for whose acts Contractor is liable in performing any of the Contractor's obligations set forth in the Specifications and/or these Terms and Conditions.  The Contractor shall indemnify and hold harmless CGS, the Vessel, her owners, and their respective employees, directors, officers, underwriters, agents, and assigns against all liability, suits, actions, claims, costs or demands of any nature and description to which any of them may be subject to by reason of damage or injury (including death) to any person or property not covered by the U.S. Longshoremen's and Harbor Workers' Compensation Act as amended (33 U.S.C. § 901 *et seq*.), caused by the negligence of the Contractor, its Subcontractors, their agents, employees, and/or any other persons for whose acts Contractor is liable in performing any of the Contractor's obligations set forth in the Specifications and/or these Terms and Conditions.

d.  The Contractor shall be responsible for and make good at its own cost and expense any and all loss or damage of whatsoever nature to the Vessel (or part thereof), its equipment, movable stores and/or cargo, and CGS's materials and equipment, resulting from the

**Exhibit A**

negligence of Contractor, any of its Subcontractors, or their respective agents and/or employees in performing any of the Contractor's obligations.

e.    CERTIFICATE OF INSURANCE MINIMUM INSURANCE COVERAGE: *See* TERMS AND CONDITIONS PART II:  Liability, Indemnity, and Contractor Insurance for Shipyards/Vessels.

**SER 09 - OWNER'S SALVAGE/SCRAP RIGHTS**:  Contractor shall advise the CGS representative of any equipment, fittings, attachments, or materials which are to be removed for disposal.  Disposition of these items will be determined on a case-by-case basis as directed by the United States of America's authorized representative.  The Owners' Representative(s) will determine and designate whether any unused material is Scrap Material or Salvage Material. The deposition of Scrap Material will be directed by the Owners' Representative(s) and will consist of one of the following methods: (1) Purchase by the shipyard or repair facility at the prevailing market price; (2) Public sale by the shipyard or repair facility at not less than the fair market value thereof; or (3) Transfer to the nearest DOD disposal activity.  Material designated as Salvage Material will be directed by the Owners' Representative(s) and may consist of one of the following: (1) Load salvageable items aboard the vessel; (2) Transfer to a DOD disposal activity; (3) Abandonment in plant; or (4) Packing, crating, and transshipment to a location directed by the Government.

**SER 10 - CONTRACTOR'S WARRANTY**:  In case any work done or material furnished by Contractor or any of its Subcontractors shall, within six (6) months from the date of the acceptance of the work or materials by CGS, prove defective or deficient, and be so reported to the Contractor in writing within that time, such defects or deficiencies shall, at the Contractor's expense, be made good to the satisfaction of CGS.  If the Work has not yet been completed and the Vessel is still at Contractor's facility, upon written notice of a warranty defect or deficiency, the Contractor shall take the necessary and reasonable actions to repair the warranty defect or deficiency within four (4) business days.  The liability of the Contractor to CGS hereunder on account of such omissions, defects or deficiencies shall not exceed the actual repair or replacement thereof.  CGS will, if and when practicable, afford the Contractor an opportunity to correct such defects or deficiencies; but, when, because of the condition or location of the Vessel or for any other reason, it is impracticable or undesirable to return the Vessel to the Contractor, such correction shall be effected at the Contractor's expense at such other location or locations and by such other contractor or contractors as CGS in its sole discretion may determine.

**SER 11 - CHANGES, PRIOR AUTHORIZATION REQUIRED**:  No additional or extra work shall be performed, nor shall any change be made in the Work covered by the Specifications, unless authorized in writing by CGS prior to the performance of such additional, extra, or changed work.  There will be no direct communications between Contractor and the U.S. Government agency that owns the Vessel relating to this Contract that could result in a contract change (constructive or actual), unless specifically authorized by CGS in advance in writing.  This does not limit any statutory or regulatory provision.

**SER 12 - FREE OF ALL CLAIMS, LIENS OR FINES**:  Upon completion of the work covered by the specifications, the Vessel shall be free and clear of all fines, claims, and liens in

**Exhibit A**

favor of unpaid workers, Subcontractors, or materialmen of any nature resulting from or in any way related to the performance of such work.

**SER 13 - FINANCIAL CAPABILITY REQUIREMENT**:  Upon CGS's request, the Contractor shall supply evidence satisfactory to CGS in the form of a bond, letter of undertaking, or letter of credit, at CGS's sole option, that the Contractor is financially able to satisfy all of its obligations relative to the Work covered by the Specifications.

**SER 14 - INTELLECTUAL PROPERTY**:  The Contractor shall pay for and protect the Vessel, the United States of America, and CGS against any claim for royalties, patent rights, and patent liability arising as a result of the performance of the Work covered by the Specifications, except in respect of claims relating to components or processes required thereby to be installed or used.

**SER 15 - FEDERAL, STATE AND LOCAL TAXES**:  The Contractor shall pay all United States, County, City or other taxes, assessments or duties assessed, made or levied against the material to be used in the performance of the work covered by the specifications, or imposed in consequence of its sale to the Contractor, as may be applicable.  Purchases made by the Contractor under this Contract are NOT EXEMPT from state and local taxes because such tax imposition may fall directly on the United States of America.  A Certificate of Exemption WILL NOT be provided.

**SER 16 - NOTICE TO PROCEED/PERFORMANCE PERIOD**:  The Contractor's liability with respect to time is to commence at the time set forth when the Contract is awarded and to cease only when all work specified herein has been completed to the satisfaction of CGS or its accredited representative and when all Contractor's equipment, tools, etc., and all rubbish have been removed from the Vessel.  The Contractor's time is subject to extension in accordance with Clause 8 of the attached REPAIRCON.

**SER 17 - TIME EXTENSIONS/PERFORMANCE PERIOD**:  It is mutually agreed that the waiving of or the granting of any extension of time on one or more items of the Work covered by the Specifications shall not abrogate the Contract as a whole, nor shall it relieve the Contractor from the obligation of complying with all the other terms and conditions of the Contract in the time and manner specified.  The issuance of requisitions for additional work shall in no way relieve the Contractor from complying with the terms of the Contract, unless specifically agreed in writing.

**SER 18 - DRYDOCK FACILITY REQUIREMENTS:**  Acceptable docking facilities include marine railways, steel floating dry-docks, and graving docks.  Wooden dry-docks are not acceptable.  Dry-docks shall have at a minimum, as applicable to dock type, the below characteristics:

1.  Reliable and functioning ballast level and draft indicating system.

2.  Functional wing wall deflection indication system or equivalent method.

**Exhibit A**

3.   Reliable and properly functioning two-way communication system to all manned stations during     dry-dock evolutions.

4.   Proper manning with trained personnel to perform docking/undockings.

5.   Manual backup of motorized valves.

6.   All ballast pumps operable and available for use.

7.   Backup power supplies in event of primary power failure.

8.   A positive method of visually determining the position of all ballast valves.

The vessel shall be drydocked at a facility that meets one of the following criteria:

a.   Is under current certification by Naval Sea Systems Command (NAVSEA) in accordance with MIL-STD-1625C, Safety Certification Program for Drydocking Facilities and Shipbuilding Ways for U.S. Navy Ships.

b.   Is under current certification by a member of the International Association of Classification Societies (IACS).

c.   Is under current certification by an independent third party engineering firm recognized by the American Bureau of Shipping as capable of performing dry-dock design reviews which determines that the dry dock planned for dry docking the ship named in the solicitation:

   (1) Is in acceptable material condition.
   (2) Has effective emergency response systems and plans.
   (3) Is safe and capable of dry-docking the intended ship and that the ship does not exceed the dry-dock's dimension rating, maximum entry draft, maximum lift capability, maximum linear load rating.
   (4) Has a successful historical record in dry-docking ships.
   (5) Has provided an incident history and claim information covering the last five years from the insurer of the dry dock facility including incident dates, description and final disposition.
   (6) Can provide the minimum clearance between the ship's keel and dry-dock flooring as required in the work item for the ship name in the solicitation.
   (7) Has a detailed procedure for docking and undocking.

d.   Is determined by CGS that the dry-dock has the required capability and services for supporting the ship named in the solicitation, has emergency response and safety plans, has drydocked a ship of equal or greater tonnage no more than six (6) months before the date of the solicitation and if no accidents or incidents (including acts of God) which may compromise the integrity and safety of the dry-dock have occurred.

Offerors shall submit information for the following characteristics of the proposed pier, if any:



a. Location, pier number and/or name, street address, city, state and zip code with a geographical reference to a current navigational chart using longitude and latitude;
b. Length;
c. Width;
d. Fire protection capability.

THE CONTRACTOR SHALL INDICATE, BY DRAWING TO SCALE, THE SHIP IN THE EXACT LOCATION IT WILL OCCUPY DURING THE PERFORMANCE PERIOD, USING THE SHIP CHARACTERISTICS GIVEN IN THE SOLICITATION.

Offerors shall furnish current soundings taken at MLW of the berthing area. These soundings must list depth in a ten-foot grid pattern from the pier string piece. The grid pattern for the intended grid berth shall extend for the entire length of the pier and outward from the pier for a minimum of 150 feet. Soundings may be taken by a qualified waterways surveyor and certified by same. Soundings shall be considered current if taken within one (1) year from date of the Solicitation and should indicate at what date they were taken. Charts shall be made up in blueprint form approximately 2' x 3' minimum with a geographic reference point of latitude and longitude and a geographic indicator of North. In addition, offerors must furnish current depth soundings for the approach of the pier and/or dry-dock from the main channel. These soundings must list the depths over the full length of the approach at a minimum of 500 foot intervals. All information must be readily available to clearly chart the progress of the Vessel from arrival at the port to safely moor or dry-dock. Soundings for the approach shall be considered current if taken within 12 months from date of issue of the Solicitation. The Vessel must be afforded safe access and egress to and from the Subcontractor's pier and/ or dry-dock. NOAA charts or excerpts of such documents will not be accepted.

Offers must furnish a completed COMSCINST 9997.1A.

CGS and the owner, Military Sealift Command (MSC), reserve the right to accomplish a thorough drydock survey either by CGS, MSC, or by an independent third party to support the evaluation of the drydock planned for drydocking the ship named in this solicitation. This is in addition to evaluating the information and data submitted by the offeror through COMSCINST 9997.1A

Anticipated arrival drafts:  31' 6"

A minimum of 2' of water below the keel at MLL W is required at all times.

A minimum of 1' of water below the keel is required as the vessel travels over the drydock sill and highest drydock blocks at docking and undocking of the vessel.

Offerors must accept the ship for berthing or dry-docking at anticipated arrival drafts. The anticipated arrival drafts are the minimum acceptable drafts and the drafts will not be reduced at the owner's expense to accommodate the subcontractor. Offerors shall be capable of


Exhibit A

accepting the vessel at the anticipated arrival drafts or provide a detailed plan to obtain the conditions necessary for safe berthing/mooring and drydocking of vessel.

**CAUTION**:  COMSCINST 9997.1A, SOUNDINGS, AND OTHER INFORMATION MUST BE INCLUDED WITH EACH OFFER AT THE TIME OF OFFER.  PRIOR SUBMITTALS FOR OTHER SOLICITATIONS ARE NOT ACCEPTABLE.  <u>FAILURE TO COMPLY WITH THESE REQUIREMENTS IN ALL MATERIAL ASPECTS WILL BE GROUNDS FOR DISQUALIFICATION OF AN OFFER</u>.

**SER 19 - MASTER AGREEMENT CANCELLATIONS**:  Save for the warranties and representations contained therein, this Contract cancels and supersedes all other Master Agreements of a like nature between the parties with respect to the Vessel.  This Contract shall be effective immediately upon execution and govern all work performed by Contractor for CGS with respect to the Vessel from and after the date of execution; provided, however, that this Contract may be terminated by CGS by delivery to Contractor of written notice of termination to the other party, the termination to be effective as of the date specified in the notice (not to be earlier than 30 days after Delivery).

CGS may terminate all or any portion of this Contract at any time, irrespective of whether or not a default has occurred, in accordance with Clause 9 of the attached REPAIRCON dated January 10, 2018.

**SER 20 - CONFLICT OF CONTRACT TERMS**:  The provisions set forth herein shall, unless specifically stated in writing to the contrary, apply to all Work performed on behalf of CGS by Contractor, its employees, Subcontractors, agents, or representatives.  In the event that the United States of America is a party to a contract involving CGS and Contractor, the terms and conditions in such a contract shall prevail over inconsistent terms and conditions that are contained herein.  WHEREFORE, IN CONSIDERATION OF the mutual covenants contained herein, the parties intending to be legally bound have executed this Contract as of the date of the applicable order.

**SER 21 - MARITIME LIENS**:

a. Neither the Contractor nor any of its agents or Subcontractors shall be entitled to a maritime lien upon the Vessel.  The Contractor agrees that nothing in or contemplated by this Contract creates or shall be construed to create any right to assert a maritime lien on the Vessel, the subject of this Contract, or to bring an action under the Public Vessels Act, 46 U.S.C. app. 791 *et seq* or the Suits in Admiralty Act, 46 U.S.C. app. 741 *et seq*.

b. The Contractor further agrees that this Contract between CGS and the Contractor creates no privity between itself and the Vessel's owner, the United States of America, and that the Contractor is relying solely on the credit of CGS for payment hereunder. The Contractor agrees that it is not authorized by either the Vessel's owner or CGS to enter into contracts on behalf of the United States of America or the Vessel, nor is the Contractor entrusted with the management of the Vessel or authorization to pledge the

**Exhibit A**

credit of the Vessel. This Contract is strictly for ship repair or alteration and does not create an agency agreement.

c. The Contractor shall indemnify and hold harmless the Government, its agencies and instrumentalities, and the CGS, against all suits, actions, claim, costs or demands against the Government, its agencies and instrumentalities, and CGS, for which the Vessel and its owner may be subject under this Contract.

d. The Contractor, as and when requested by CGS, shall execute the following waiver prior to commencement of any Work under this Contract and shall cause its Subcontractors to execute a similar waiver; substituting the term "Subcontractor" for the term "Contractor" and the term "Contractor" for the term "CGS":

Detyens Shipyards Inc., the Contractor, hereby agrees that all work performed by the Contractor on the USNS Stockham, a vessel owned by the United States Government, is being performed under Contract between CGS and Contractor and the Contractor is relying solely on the credit of CGS for payment. The Contractor agrees that it will perform work upon or for the USNS Stockham only at the direction of CGS pursuant to the written contract. The Contractor understands that the Contractor is not authorized by either the Owner of the vessel or CGS, to enter into contracts on behalf of the Government or CGS, nor is the Contractor entrusted with management of the vessel or authorized to pledge the credit of the vessel. The Contractor further understands that it is not to proceed on work unless pursuant to a written contract. The Contractor hereby knowingly and voluntarily releases and waives any and all rights to assert any maritime lien(s) upon the Vessel. The Contractor has also been provided with a copy of the clause entitled "Maritime Liens" which is hereby incorporated in full and has read that clause. The Contractor understands this clause and agrees to all of its terms and conditions, as if they were written in full text in this waiver.

e. The Contractor shall indemnify and hold harmless the United States of America, its agencies and instruments, and CGS, against all suits, actions, claims, costs or demands against the United States of America, its agencies and instruments and CGS, for which the Vessel and its owner may be liable under this subcontract.

f. The Contractor agrees to include, and require inclusion of, this clause, suitably modified to identify the parties in all subcontracts at any tier for suppliers of necessaries to the Vessel, including but not limited to such goods and services as are furnished to the Vessel in accordance with this Contract.

g. The Contractor will complete and sign the above release form and shall also obtain similar releases from each of its Subcontractors. Before commencing work on the Vessel, Contractor shall provide CGS the executed "Contractor's Release and Certificate of Completion" form and shall provide the similar form executed by each Subcontractor before each such Subcontractor commences work.

**Exhibit A**

**SER 22 - LIEN RELEASES**:  In addition to Contractor's obligations in accordance with SER 21- Maritime Liens above, Contractor shall, as and when requested by CGS, furnish evidence satisfactory to CGS and the United States of America that claims for labor and material furnished by Contractor in connection with performance of this Contract have been paid, including claims for union health, welfare and pension fund payments and for payroll taxes as may be applicable. Such evidence shall be furnished in such form and manner as requested by CGS, and all statements shall, if required by CGS, be made by sworn affidavit.  Contractor shall furnish to CGS releases of bond rights and lien rights by any and all Subcontractors that have furnished labor, material, or other things in the performance of this Contract.  It is agreed that payment of money other than the 5% retainage due to Contractor need not be made by CGS unless and until such releases are furnished.  Contractor shall deliver its work free from all claims, encumbrances, or liens.

**SER 23 - GOVERNMENT-REQUIRED CLAUSES**: In the event this Contract pertains to performance by Contractor of a Federal public contract, Contractor acknowledges receipt of and agrees to comply with applicable government-required clauses, including Federal Acquisition Regulations.

**SER 24 - COMPLIANCE WITH EMPLOYMENT LAW**: Contractor shall ensure compliance with all applicable local, state, and federal employment laws as they apply to Contract Labor personnel

**SER 25 - FINANCING/PAYMENT TERMS**:  Standard payment terms are NET 30 days calculated from the day after the CGS office located in Jacksonville, Florida, U.S.A. is in receipt of a valid invoice for goods and/or services.  At the close of the Contract, to submit a "valid" invoice for 100 percent completion, Contractor must deliver a signed Contractor's Release and Certification of Completion.  CGS may apply or set off against any amount due Contractor the amount, estimated in good faith by CGS if not liquidated, of any indebtedness or claim of any kind of Contractor to CGS, whether or not arising under this Contract. There will be a 5% retainage, of the final contract value, 50% of the 5% retainage will payed 90 days during the warranty period and the remaining 50% will be paid after the 180-day warranty holdback period provided that there are no outstanding reports or warranty issues.

**SER 26 - SHIP DELIVERY/REDELIVERY**: A certificate (Exhibit II) shall be executed between CGS and Contractor when custody of the Vessel is transferred from CGS to Contractor for contract performance, either prior to towing, or upon arrival of the Vessel in Contractor's facility if Vessel arrives under its own power.  The "Ship Delivery/Redelivery Certificate" shall remain in effect until a superseding "Ship Delivery/Redelivery Certificate" is executed upon redelivery of the Vessel from Contractor to CGS.  If the Vessel returns to Contractor's facility after a sea trial, a "Ship Delivery/Redelivery Certificate" will again be executed.  As noted on the "Ship Delivery/Redelivery Certificate", Contractor accepts the Vessel with all fixtures, stores and appurtenances, including liquids and slops.  Contractor shall complete a joint, comprehensive inspection survey of the Vessel with the CGS representative/Port Engineer prior to redelivery of the Vessel to CGS.  Contractor shall redeliver the Vessel from the Contractor's care, custody, and control to CGS by executing the Vessel delivery/redelivery certificate form at

**Exhibit A**

the Vessel's departure from the Contractor's facility. All equipment, furnishing, appurtenances, stores, and fixtures removed from the Vessel, except that specified for temporary removal or otherwise designated by the CGS Representative or the Specification, shall remain the property of the United States of America.

Upon completion of all work in this Specification package and final acceptance of the CGS representative/Port Engineer, Contractor shall ensure that all new and disturbed areas of the Vessel are clean and ready for sea in all respects. Contractor shall secure new and disturbed equipment and components of the Vessel for sea. If required by this Contract, Contractor shall submit written documentation of all regulatory approvals to the Port Engineer at least three (3) calendar days prior to the Vessel's scheduled departure from the Contractor's facility.

## SER 27 – SHIPYARD/INDUSTRIAL ASSISTANCE CLAIMS CLAUSE

Claims. In the event that the Shipyard/Industrial Assistance subcontractor submits a claim or request for adjustment to the contract price, for performance of work under a contract, the Contractor shall provide:

1. A description of work required by the contract, including the citations to the contract, before the factual events which led to the claim;

2. A detailed report on the status of the work as originally required by the contract;

3. A description of new requirements or other events which led to the claim;

4. A list of components, equipment, and other identifiable property involved in the claim. The status of manufacture, procurement, or installation of shipyard/industrial assistance Contractor furnished property is to be indicated. The status of specified design and production work. Items of raw material, purchased parts, components, and other identifiable hardware, which are made excess by the change and which are not to be retained by the Contractor, and are listed for later disposition;

5. A description of work completed which is deleted, or will be deleted, by events which led to the claim;

6. A description of interferences and inefficiencies involved in performing the work;

7. A description of each element of work disruption and exactly how work has been, or will be, disrupted, including:
   a. The calendar period of time during which disruption occurred, or will occur;
   b. Area(s) aboard the ship where disruption occurred, or will occur;
   c. Trade(s) disrupted, with a breakdown of man-hours for each trade;
   d. Scheduling of trades before, during, and at the period of disruption;
   e. Description of measures taken to lessen the disruptive effect;

8. Delay in delivery attributable solely to the events which led to the claim;



9.  Other new works attributable to the events which led to the claim;

10. Supplementing the foregoing, a narrative statement of the direct causal relationship between any alleged act or omission of the Contractor or the Government, and the claimed consequences thereof, cross-referenced to detailed information provided as required above;

11. A statement of costs budgeted for the work as originally specified under the contract (prior to the events leading to the claim)."

**SER 28 - LIQUIDATED DAMAGES**:  Liquidated damages for delay in contract performance is US $84,416  (Eighty four thousand four hundred sixteen UNITED STATES DOLLARS) per calendar day unless an approved contract extension has been signed by CGS.  Contractor shall provide written notice to the CGS Port Engineer or other authorized CGS representative at least five (5) calendar days prior to a change in the Vessel's scheduled departure date.  Otherwise, CGS will consider agreed contract completion date as Contractor's certification that Contractor will complete all work to enable the Vessel's departure on the scheduled departure date and CGS will mobilize the full crew and the owner's sea trial team.  In the event that the Contractor fails to drydock the Vessel within forty-eight hours of the Contract Period the Contractor shall pay to the Operator 3,500 dollars per day that dry-docking is delayed beyond the first forty-eight hours.

**SER 29 - RED LETTER CLAUSES; WAIVER; EFFECT**: Failure to delete any lien provisions from any standard Red Letter Clauses shall be considered non-responsive to this proposal and shall be void and of no effect in any Contract between Contractor and CGS related to the Vessel.

**SER 30 - EQUAL EMPLOYMENT OPPORTUNITY**:   It is understood that the successful contractor will comply with Contractor's responsibilities (a) under Executive Order 11246, as amended, relating to Equal Employment Opportunity, non-segregated facilities and Affirmative Action Program and, with respect to requiring Subcontractor and Suppliers to comply therewith; (b) under Executive Order 11701 which provides for the listing of job vacancies by Federal Contractors and Subcontractors; (c) under Executive Order 11458 related to utilization of Minority Business Enterprises and, for Contracts of $500,000 or more, the Minority Business Subcontractors Program; and (d) under regulations issued pursuant to such order as applicable.

**PART II:    Liability, Indemnity, and Contractor Insurance for Shipyards/Vessels**

(a)    Duty of Care:  The Contractor shall exercise reasonable care and use his best efforts to prevent accidents, injury, death, and/or damage to all persons and property in and about the work done and to the Vessel or portion thereof upon which work is done.

(b)    Liability for loss of or damage to the Vessel, her materials, and equipment:



(1)     Except as set forth in this clause or any guarantee or warranty provision in the Contract, the United States of America, in its capacity as Owner of the Vessel, assumes the risk of physical loss or damage to any part of the Vessel, its machinery, equipment, stores, and other property including cargo if owned by the United States of America except to the extent that such loss or damage is caused by any negligence, fault, error, act or omission of the Contractor, its Subcontractors, or the servants, agents, or employees of the Contractor or its Subcontractors.  The burden of proving freedom from fault shall be borne by the Contractor.

(2) Limit of Liability – Except as set forth below, Contractor's liability under this paragraph (b) shall not exceed total damage to the ship including total loss up to US $30,000,000 (THIRTY MILLION UNITED STATES DOLLARS) per accident or occurrence per Vessel, and shall not exceed in the aggregate per accident or occurrence the sum of total damage to the ship or ships including total loss up to us $30,000,000 (THIRTY MILLION UNITED STATES DOLLARS) multiplied by the number of United States of America-owned Vessels in the care, custody or control of the Contractor at the location and at the time of the accident or occurrence giving to the loss or damage.

(3) CGS and Owner assume no risk with respect to loss or damage compensated for by insurance or otherwise or resulting from risks with respect to which the Contractor has failed to maintain insurance as required by this clause.


(4)  CGS and Owner assume no risk of, and will not pay for, any costs of the following:
    (i)     Inspection, repair, replacement, or renewal of any defects in the Vessel(s), her appurtenances, material, and/or equipment due to—
        (A)   Defective workmanship performed by the Contractor or any Subcontractor;
        (B)   Defective materials or equipment furnished by the Contractor or any Subcontractor; or
        (C)   Workmanship, materials, or equipment that does not conform to the requirements of the contract, whether or not the defect is latent or whether or not the nonconformance is the result of negligence.

    (ii)    Loss, damage, liability, or expense caused by, resulting from, or incurred as a consequence of any delay or disruption, willful misconduct or lack of good faith by the Contractor or any of its representatives that have supervision or direction of—
        (A)   All or substantially all of the Contractor's business; or
        (B)   All or substantially all of the Contractor's operation at any one plant or facility.

(5) As to any risk that is assumed by the Owner, the Owner shall be subrogated to any claim, demand, or cause of action against third parties that exists in favor of the

**Exhibit A**

Contractor.   If required by the Owner, the Contractor shall execute a formal assignment or transfer of the claim, demand, or cause of action.

(6) No party other than CGS shall have any right to proceed directly against the Owner or join the Owner as a codefendant in any action.

(7)    In the event of loss of or damage to the Vessel(s), her appurtenances, material, or equipment that exceeds the limit of liability set forth in (b)(2) above, the Contractor shall promptly notify CGS, both verbally and in writing, of the loss or damage and await direction from CGS.

(c)    <u>Indemnification</u>.  As to third parties, including, but not limited to, agents, employees or servants of the Contractor, including any Subcontractor and its agents, employees, and servants, the Contractor hereby agrees to indemnify and hold harmless the Owner, the Vessel and CGS, and its and their respective officers, directors, employees, agents, assigns, and underwriters, from and against any and all suits, actions, claims, demands, or causes of action, formal or informal, as a result of property damage, damage, personal injury, or death  arising in whole or in part from the fault, negligence, wrongful act, or wrongful omission of the Contractor, any of its Subcontractor, or their respective servants, agents, employees, or any other persons for whose acts Contractor or its Subcontractor(s) may be responsible.

(1)    <u>Limit to Indemnification</u> - Except as set forth in paragraph (c)(4) below for water pollution, the Contractor's obligation to indemnify under this subparagraph shall not exceed the sum of US $20,000,000 (TWENTY MILLION UNITED STATES DOLLARS) as a consequence of any single occurrence with respect to any one Vessel.

(2)    This indemnity includes, without limitation, suits, actions, claims, costs, or demands of any kind, whether formal or informal, resulting from death, personal injury, or property damage occurring during the period of performance of work on the Vessel or within 90 days after redelivery of the Vessel.  For any such suit, action, claim, cost, or demand made more than ninety (90) days after redelivery, the rights of the parties shall be as determined by other provisions of this Contract and by applicable law.  The indemnity does apply to death occurring more than ninety (90) days after redelivery where the injury was sustained during the period covered by the indemnity.

(3)    The indemnity does not apply to damage or injury caused solely by the gross negligence or willful misconduct of the Owner or its employees or agents, or by CGS or its employees or agents.  The burden of proving gross negligence or willful misconduct of the Owner or CGS or their respective agents or employees shall be borne by the Contractor.

(4)    The Contractor's obligation to indemnify under this paragraph for liabilities arising from the discharge or release, or substantial threat of discharge or release,

**Exhibit A**

of oil or hazardous materials shall not exceed the sum of US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS) as a consequence of any single occurrence with respect to any one Vessel.

(d)  <u>Insurance</u>. The following provisions regarding liability and insurance shall remain in force during the course of this Contract.

(1)  The Contractor shall, at its sole expense, including the cost of all deductibles, procure and maintain the following insurance for the duration of the Contract Period, such insurance to specifically include liability assumed by the Contractor under this contract. --

(i)  Casualty, accident, and liability insurance, insuring the performance of its obligations under paragraph (c) of this clause in the minimum amounts set forth below:

A.  **Comprehensive General Liability** including, but not limited to, coverage for products and completed operations liability, property damage liability, and contractual liability with a minimum US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS) combined single per-occurrence limit for bodily injury and property damage and US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS) limit in the aggregate; and

B.  **Ship Repairer's Legal Liability and Marine General Liability Insurance** in the minimum amount of US $10,000,000 (TEN MILLION UNITED STATES DOLLARS) in the aggregate, written on an occurrence basis, endorsed to cover premises operations, products / completed operations, personal injury, and contractual liability, with "care, custody and control" exclusions deleted, any watercraft exclusions deleted, and including an *in rem* endorsement.

C.  Should the Work specified under this Contract include delivery of fuel or other hazardous products, or waste disposal, **Sudden and Accidental Pollution Insurance** with limits of liability not less than US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS) per Vessel, per occurrence, and any other public liability or other environmental impairment coverage that may be required by federal, state, and/or local regulatory authorities. Contractor may self-insure for the indemnification required by paragraph (c)(4) above this US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS) minimum requirement.

(ii)  **Statutory Workers Compensation** (or its equivalent as may be required in the place where the work is being performed), including coverage under

**Exhibit A**

the United States Longshoreman's and Harbor Workers' Compensation Act (LHWCA), if required, and the Defense Base Act Extension of the U.S. Longshoreman's and Harbor Workers' Compensation Act (DBA), covering Contractor's employees for all compensation and other benefits required by applicable law or by governmental authority on account of injury, death, sickness or disease; and **Employer's Liability and/or Maritime Employer's Liability insurance** with limits of liability of no less than US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS), any one accident or occurrence, if not covered under Contractor's P&I insurance.

(iii)   Should the services supplied under this Contract include the use of Contractor's vessel(s), **Protection and Indemnity Insurance** with limits of liability of no less than US $5,000,000 (FIVE MILLION UNITED STATES DOLLARS) per occurrence.

(iv)   Contractor shall require all its Subcontractors performing services in association with the Work performed by Contractor to maintain in force insurance of the same types and in the amounts set forth above in paragraph (d)(1).

(2)   Each such policy shall contain a confirmation that there shall be no recourse against the United States of America or CGS for payment of premium and must provide for at least thirty (30) calendar days' advance written notice of cancellation (without disclaimer), reduction in coverage, or of any non-renewal that is the option of the insurer, said notice to be provided to CGS at the address specified below.

(3)   Contractor's insurance shall be primary with respect to any insurance carried by CGS or Owner, insofar as such insurance may apply to any liabilities that are properly the responsibility of Contractor under this Contract.

(4)   Prior to commencement of the Work contemplated by this Contract, Contractor shall provide CGS with evidence of all insurance policies required by paragraph (d) of this clause.  However, commencement of the Work without provision of the required evidence of insurance shall not constitute a waiver of Contractor's obligation to maintain the required insurance coverages and to furnish CGS with the aforesaid evidence of insurance.  Said evidence of insurance shall take the form of a detailed certificate of insurance, cover note, or policy from Contractor's insurance broker(s) confirming the existence and amounts of the coverages required above.  With the sole exception of Worker's Compensation / Employer's Liability policies, each such certificate, cover note, or policy shall name CGS, the United States of America, and their respective contractors (with the exception of Contractor) and subcontractors as additional assureds.  Each such certificate, cover note, or policy shall be endorsed to waive all rights of subrogation against CGS, the United States of America, and the Vessel, and shall specify the types of

**Exhibit A**

coverage, policy forms, policy periods, deductibles (if any), and underwriters with the percentage of participation of each. Excess liability and umbrella liability policies may be used in combination with primary policies to meet the minimum insurance requirements set forth above. The New York Suable Clause or Service of Suit USA Clause must be confirmed for any foreign underwriter placements.

Certificates of Insurance and Notices of Cancellation shall be sent to:

Crowley Maritime Corporation
Risk Management Department
9487 Regency Square Blvd.
Jacksonville, FL 32225
USA
Fax: +1 (904) 805-1639
Email: Vendor.Insurance@crowley.com

(5)    If it is judicially determined that any of the insurance obligations set forth in this paragraph (d) are unenforceable in any respect under the applicable law, said obligations shall automatically be amended to conform to the maximum limits and other provisions in the applicable law for so long as the law is in effect.

(6)    Should Contractor fail to procure or maintain any of the insurance required by this paragraph (d), or by any act or omission vitiate or invalidate any of the insurance required by this paragraph (d), Contractor shall indemnify CGS and the United States of America to the extent that either or both of them suffer or incur any loss, damage, liability, or expense in consequence of such failure, act, or omission.

(e)    <u>Notice of Loss:</u>  It is expressly understood that Contractor shall promptly notify CGS of any accident involving the Vessel, such notification to include at a minimum full details of the loss or damage, including the names of all parties involved in the incident, location of the accident, names and contact information for all witnesses, and confirmation of prompt notification by Contractor to its responsible underwriter(s).

(1)    If a claim or suit is later filed against the Contractor as a result of the event, the Contractor shall immediately deliver to CGS every demand, notice, summons, or other process received by the Contractor or its employees or representatives.

(2)    The Contractor shall cooperate with CGS and the Owner and shall, upon request, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits.  CGS shall reimburse the Contractor for expenses incurred in this effort, other than the cost of maintaining the Contractor's usual organization and costs covered by insurance, provided such expenses were pre-approved in writing by CGS.

(3)    The Contractor shall not, except at its own expense, voluntarily make any payments, assume any obligations, agree to any settlements, or otherwise incur

**Exhibit A**

any expense associated with any incident involving the Vessel without the express written consent of CGS, other than what would be imperative for the protection of the Vessel(s) at the time of the event.

**PART III:    Crowley Government Services, Inc., Terms and Conditions (Supplemental) - Environmental Handling, Transportation, and Disposal of Hazardous and Regulated Materials**

The Contractor shall pursue work without detriment to the environment and perform all work consistent with industry wide standards and laws and regulations governing the control of pollution of the environment without additional cost to CGS. Additionally:

(a) Contractor agrees to indemnify, defend, and save CGS and the United States of America harmless from and assumes any liability, payment, expense (including reasonable attorney's fees) or loss resulting from the failure by the Contractor, its agents, or its subcontractors for any reason to comply fully with every federal, state or local law, statute, regulation, rule, ordinance, treaty or government directive which directly or indirectly regulates or affects the collection, handling, storage, transportation or disposal of any hazardous material, hazardous waste or other regulated material encountered by the Contractor hereunder, and from and against any and all claims, suits, liabilities, directly or indirectly, based on damage to, or destruction of, any property (including the property of Contractor), or injury (including death) to any person or property arising out of or attributable to any negligent or willful act or omission to act, of or by Contractor, its agents or Subcontractors in performing the Contract hereunder. Such indemnification liability shall be binding upon successors in interest of the Contractor, and shall survive Contract final payment.

(b)    Contractor agrees that in performance of this Contract, Contractor shall comply with all applicable federal, state, and local laws, rules, and regulations regarding any hazardous material, hazardous waste, or other regulated material.  It is understood and agreed that all performance under this Contract is subject to all applicable waste regulations of the Environmental Protection Agency, Department of Transportation, the applicable state Department of Water Resources, OSHA, US Coast Guard, and/or other government agencies having jurisdiction over the operations of the CGS and Contractor with respect to the goods and services specified herein.

(c)    CGS shall have the right to inspect and obtain copies of all written licenses, permits or approvals, issued by any governmental entity or agency to Contractor which are applicable to this Contract; to inspect and test, at its own expense, the handling, loading, transportation, storage, treatment or disposal operations conducted by Contractor in the performance of this Contract regarding any hazardous material, hazardous waste or other regulated material.

(d)    Contractor shall be liable for the maintenance and production of records (defined within the applicable regulation applicable at the time of award) regarding the goods and services performed under this Contract relating to hazardous material, hazardous waste or other regulated material for a period of ten years from the effective date of the Contract.

**Exhibit A**

other regulated material hereunder. Contractor shall provide CGS copies of manifests within 30 days after signature on the manifest.

(f)     Contractor by its offer and acceptance of this Contract acknowledges that it or its Subcontractor(s) is / are qualified and certified in compliance with all applicable laws for the provision of goods or services under this Contract which in any way related to hazardous material, hazardous waste or other regulated material. Contractor shall provide CGS with its or its Subcontractor's EPA number when hazardous waste or material is handled, transported and/or disposed of.

Detyens Shipyards, Inc.
Ship Yard Name

PETER C. BROWNE, JR.
Printed Name

*Peter C. Browne*
Signature

9/5/18
Date

# Exhibit A

Attachment B to BIMCO REPAIRCON dated 24 August 2018
By and between Crowley Government Services, Inc., Managers,
And Detyens Shipyards, Inc., Contractor

**Crowley Government Services, Inc. (CGS) Flow Down Clauses for Subcontracts under Prime Contract No. N62387-15-C-3135**

| | | |
|---|---|---|
| 52.202-1 | Definitions | NOV 2013 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-5 | Covenant Against Contingent Fees | APR 1984 |
| 52.203-7 | Anti-Kickback Procedures | OCT 2010 |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity | JAN 1997 |
| 52.203-10 | Price Or Fee Adjustment For Illegal Or Improper Activity | JAN 1997 |
| 52.203-12 | Limitation On Payments To Influence Certain Federal Transactions | OCT 2010 |
| 52.203-13 | Contractor Code of Business Ethics and Conduct | APR 2010 |
| 52.203-16 | Preventing Personal Conflicts of Interest | DEC 2011 |
| 52.204-2 | Security Requirements | AUG 1996 |
| 52.204-9 | Personal Identity Verification of Contractor Personnel | JAN 2011 |
| 52.204-10 | Reporting Executive Compensation and First-Tier Subcontract Awards | JUL 2013 |
| 52.209-6 | Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment | AUG 2013 |
| 52.209-9 | Updates of Publicly Available Information Regarding Responsibility Matters | JUL 2013 |
| 52.215-2 | Audit and Records--Negotiation | OCT 2010 |
| 52.215-10 | Price Reduction for Defective Certified Cost or Pricing Data | AUG 2011 |
| 52.215-12 | Subcontractor Certified Cost or Pricing Data | OCT 2010 |
| 52.219-8 | Utilization of Small Business Concerns | JUL 2013 |
| 52.219-9 | Small Business Subcontracting Plan | JUL 2013 |
| 52.219-14 | Limitations On Subcontracting | NOV 2011 |
| 52.219-16 | Liquidated Damages-Subcontracting Plan | JAN 1999 |
| 52.222-3 | Convict Labor | JUN 2003 |
| 52.222-21 | Prohibition Of Segregated Facilities | FEB 1999 |
| 52.222-26 | Equal Opportunity | MAR 2007 |
| 52.222-29 | Notification Of Visa Denial | JUN 2003 |
| 52.222-35 | Equal Opportunity for Veterans | SEP 2010 |
| 52.222-36 | Affirmative Action For Workers With Disabilities | OCT 2010 |
| 52.222-37 | Employment Reports on Veterans | SEP 2010 |
| 52.222-40 | Notification of Employee Rights Under the National Labor Relations Act | DEC 2010 |
| 52.222-41 | Service Contract Act Of 1965 | NOV 2007 |
| 52.222-50 | Combating Trafficking in Persons | FEB 2009 |
| 52.222-54 | Employment Eligibility Verification | AUG 2013 |
| 52.223-3 | Hazardous Material Identification And Material Safety Data | JAN 1997 |
| 52.223-5 | Pollution Prevention and Right-to-Know Information | MAY 2011 |
| 52.223-6 | Drug-Free Workplace | MAY 2001 |
| 52.223-10 | Waste Reduction Program | MAY 2011 |
| 52.223-12 | Refrigeration Equipment and Air Conditioners | MAY 1995 |
| 52.223-18 | Encouraging Contractor Policies To Ban Text Messaging While Driving | AUG 2011 |
| 52.224-1 | Privacy Act Notification | APR 1984 |
| 52.224-2 | Privacy Act | APR 1984 |

# Exhibit A

| 52.225-13 | Restrictions on Certain Foreign Purchases | JUN 2008 |
| 52.226-1 | Utilization Of Indian Organizations And Indian-Owned Economic Enterprises | JUN 2000 |
| 52.227-1 | Authorization and Consent | DEC 2007 |
| 52.227-2 | Notice And Assistance Regarding Patent And Copyright Infringement | DEC 2007 |
| 52.228-3 | Worker's Compensation Insurance (Defense Base Act) | APR 1984 |
| 52.229-3 | Federal, State And Local Taxes | FEB 2013 |
| 52.229-6 | Taxes--Foreign Fixed-Price Contracts | FEB 2013 |
| 52.232-1 | Payments | APR 1984 |
| 52.232-8 | Discounts For Prompt Payment | FEB 2002 |
| 52.232-9 | Limitation On Withholding Of Payments | APR 1984 |
| 52.232-11 | Extras | APR 1984 |
| 52.232-17 | Interest | OCT 2010 |
| 52.232-18 | Availability Of Funds | APR 1984 |
| 52.232-23 | Assignment Of Claims | JAN 1986 |
| 52.232-25 | Prompt Payment | JUL 2013 |
| 52.232-40 | Providing Accelerated Payments to Small Business Subcontractors | DEC 2013 |
| 52.233-1 | Alt I Disputes (Jul 2002) - Alternate I DEC 1991 | |
| 52.233-3 | Protest After Award | AUG 1996 |
| 52.233-4 | Applicable Law for Breach of Contract Claim | OCT 2004 |
| 52.237-2 | Protection Of Government Buildings, Equipment, And Vegetation | APR 1984 |
| 52.237-3 | Continuity Of Services | JAN 1991 |
| 52.242-1 | Notice of Intent to Disallow Costs | APR 1984 |
| 52.242-13 | Bankruptcy | JUL 1995 |
| 52.243-1 | Alt I Changes--Fixed Price (Aug 1987) - Alternate I APR 1984 | |
| 52.243-7 | Notification Of Changes | APR 1984 |
| 52.244-5 | Competition In Subcontracting | DEC 1996 |
| 52.244-6 | Subcontracts for Commercial Items | DEC 2013 |
| 52.245-1 | Government Property | APR 2012 |
| 52.245-9 | Use And Charges | APR 2012 |
| 52.246-20 | Warranty Of Services | MAY 2001 |
| 52.246-25 | Limitation Of Liability--Services | FEB 1997 |
| 52.247-63 | Preference For U.S. Flag Air Carriers | JUN 2003 |
| 52.247-64 | Preference for Privately Owned U.S. - Flag Commercial Vessels | FEB 2006 |
| 52.248-1 | Value Engineering | OCT 2010 |
| 52.249-2 | Termination For Convenience Of The Government (Fixed-Price) | APR 2012 |
| 52.249-8 | Default (Fixed-Price Supply & Service) | APR 1984 |
| 252.203-7000 | Requirements Relating to Compensation of Former DoD Officials | SEP 2011 |
| 252.203-7001 | Prohibition On Persons Convicted of Fraud or Other Defense-Contract-Related Felonies | DEC 2008 |
| 252.203-7002 | Requirement to Inform Employees of Whistleblower Rights | SEP 2013 |
| 252.204-7000 | Disclosure Of Information | AUG 2013 |
| 252.204-7012 | Safeguarding of unclassified controlled technical information | NOV 2013 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | DEC 2006 |
| 252.223-7001 | Hazard Warning Labels | DEC 1991 |
| 252.223-7004 | Drug Free Work Force | SEP 1988 |
| 252.225-7001 | Buy American And Balance Of Payments Program | DEC 2012 |
| 252.225-7002 | Qualifying Country Sources As Subcontractors | DEC 2012 |
| 252.225-7004 | Report of Intended Performance Outside the United States | |

# Exhibit A

|  |  |  |
|---|---|---|
|  | and Canada--Submission after Award | OCT 2010 |
| 252.225-7005 | Identification Of Expenditures In The United States | JUN 2005 |
| 252.225-7006 | Quarterly Reporting of Actual Contract Performance Outside the United States | OCT 2010 |
| 252.225-7012 | Preference For Certain Domestic Commodities | FEB 2013 |
| 252.225-7013 | Duty-Free Entry | OCT 2013 |
| 252.225-7025 | Restriction on Acquisition of Forgings | DEC 2009 |
| 252.225-7040 | Contractor Personnel Authorized to Accompany U.S. Armed Forces Deployed Outside the United States | FEB 2013 |
| 252.225-7041 | Correspondence in English | JUN 1997 |
| 252.225-7043 | Antiterrorism/Force Protection Policy for Defense Contractors Outside the United States | MAR 2006 |
| 252.225-7048 | Export-Controlled Items | JUN 2013 |
| 252.226-7001 | Utilization of Indian Organizations and Indian-Owned Economic Enterprises, and Native Hawaiian Small Business Concerns | SEP 2004 |
| 252.227-7013 | Rights in Technical Data--Noncommercial Items | JUN 2013 |
| 252.227-7016 | Rights in Bid or Proposal Information | JAN 2011 |
| 252.227-7027 | Deferred Ordering Of Technical Data Or Computer Software | APR 1988 |
| 252.227-7030 | Technical Data--Withholding Of Payment | MAR 2000 |
| 252.227-7037 | Validation of Restrictive Markings on Technical Data | JUN 2013 |
| 252.232-7003 | Electronic Submission of Payment Requests and Receiving Reports | JUN 2012 |
| 252.232-7010 | Levies on Contract Payments | DEC 2006 |
| 252.233-7001 | Choice of Law (Overseas) | JUN 1997 |
| 252.243-7001 | Pricing Of Contract Modifications | DEC 1991 |
| 252.243-7002 | Requests for Equitable Adjustment | DEC 2012 |
| 252.244-7001 | Contractor Purchasing System Administration | JUN 2012 |
| 252.245-7000 | Government-Furnished Mapping, Charting, and Geodesy Property | APR 2012 |
| 252.245-7001 | Tagging, Labeling, and Marking of Government-Furnished Property | APR 2012 |
| 252.245-7002 | Reporting Loss of Government Property | APR 2012 |
| 252.245-7004 | Reporting, Reutilization, and Disposal | MAY 2013 |

52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)
This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):
https://www.acquisition.gov/far/
https://www.acq.osd.mil/dpap/dfarspgi/current/index.html
(End of clause)

