IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | |
|---|---|
| TIFFANY N. PROVENCE, as the Personal Representative for the Estate of Juan Antonio Villalobos Hernandez, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, CROWLEY MARITIME CORPORATION, CROWLEY GOVERNMENT SERVICES, INC., DETYENS SHIPYARDS, INC., and HIGHTRAK STAFFING, INC. d/b/a HITRAK STAFFING, INC. <br><br> Defendants. | Civil Action No.: 2:21-CV-965-RMG <br><br><br><br><br><br> **MOTION FOR SUMMARY JUDGMENT OF CROWLEY MARITIME CORPORATION AND CROWLEY GOVERNMENT SERVICES, INC.** |

Defendants Crowley Maritime Corporation ("CMC") and Crowley Government Services, Inc. ("CGS") (collectively "Crowley") hereby move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment with respect to the Plaintiff's claims in this action. The grounds for this motion are that there is no issue of fact as to CGS' status as an agent of the United States as regards the public vessel at issue in this case, such that that Plaintiff's exclusive remedy for the fatality described in the Complaint is an action against the United States under the Public Vessels Act, the Suits in Admiralty Act, and Section 5(b) of the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 905(b); and further that CMC is a mere holding company that did not commit any acts or omissions of its own with respect to the matters described in the Complaint.

This motion shall be supported by Plaintiff's Complaint; the Declaration of Paul Varghese filed herewith as Exhibit 1; by the excerpts from the Deposition of Detyens Shipyards, Inc.

1

(including deposition exhibits 2 and 3) filed herewith as Exhibit 2; and by the excerpts from the Deposition of Crowley Maritime Corporation attached as Exhibit 3. This filing is intended as a full explanation of the motion in accordance with Local Rule 7.04, DSC.

## FACTS AND PROCEDURAL HISTORY

The USNS *1st Lieutenant Jack Lummus* ("the Vessel" or "the *Lummus*") is a public vessel of the United States. *See Complaint* (Entry No. 1 at ¶ 3). Pursuant to a government contract (the "MSC Contract")[1] awarded on July 15, 2015 by the Military Sealift Command ("MSC")[2] the *Lummus* and five other public vessels are operated by Crowley Government Services, Inc. *See* Exhibit 1, Varghese Declaration, and attached contract. The MSC Contract required CGS to "operate the ships and related ship systems and equipment in accordance with United States Coast Guard (USCG) and the American Bureau of Shipping (ABS) rules and regulations." (MSC Contract § 1.1.1).

Although CGS was to operate the ships, the MSC Contract clearly contemplated the ships would remain dedicated to government service. Operational control remained with MSC through its operational commander. (MSC Contract § 1.1.2). Each ship's master was required to "comply with MSC sailing orders and operational orders promulgated by the ship's Operational Commander." (*Id.* at § 1.1.13.1). The MSC Contract also stressed the sovereign nature of the covered vessels. Section 1.1.3 stated that the master of each vessel,

> while performing ship operations, shall advise foreign authorities that each USNS vessel under this contract is a sovereign immune vessel of the United States. These privileges include immunity from arrest or search (whether in foreign internal or

---

[1] The cover page and sections C-1, C-2 and C-3 of the MSC Contract are attached to the Declaration of Paul Varghese filed herewith. The entire MSC Contract runs over 600 pages and contains classified information which was redacted for purposes of production to the other parties in this action.

[2] MSC is the abbreviation of Military Sealift Command, a division of the United States Navy.

2

> territorial waters, or in international waters), immunity from foreign taxation, exemption from any foreign state regulation requiring flying the flag of such foreign state either in its ports or while passing through its territorial sea, and entitlement to exercise exclusive control over persons on board such vessels with respect to acts performed on board.

With respect to vessel maintenance, the MSC Contract required CGS to

> maintain the material condition of all ships under this contract in accordance with the requirements outlined in Section 06.6 of the Technical Manual and all other applicable instructions, rules, and regulations. This maintenance includes scheduling, managing, and documenting various preventive, predictive, and corrective maintenance actions in accordance with applicable ABS, U.S. Coast Guard, and MSC rules and policy.

(MSC Contract § 2.1). Consistent with this requirement, on September 5, 2018, CGS entered in a ship repair contract with Detyens Shipyards, Inc. ("DSI") for repairs to the *Lummus*. (*See* Exhibit 2 (30(b)(6) deposition of DSI) at p. 48-49 and Dep. Ex. 2). The specifications for that contract required DSI to, among other things, "perform maintenance, repairs and renew the lifeboat falls serving the vessel's six (6) lifeboats." (*Id.* at 83-84 and Dep. Ex. 3).

According to the Plaintiff's Complaint, Juan Antonio Villalobos Hernandez was recruited by a staffing firm to work as a welder for DSI. (*See* Entry No. 1 at ¶¶ 10, 14-16). On April 3, 2019, DSI assigned Hernandez to work on refurbishing the lifeboat davits aboard the *Lummus*. (*Id.* at ¶¶ 12, 17). Hernandez was killed when the securing wire on one of the davit arms failed, allowing the davit arm to fall from the upright to the lowered position. (*Id.* at ¶¶ 18-26).

The Plaintiff, who is the personal representative of Hernandez's estate, filed this action on April 1, 2021. As defendants, Plaintiff named the United States, CGS, a second Crowley entity called Crowley Maritime Corporation ("CMC"), DSI, and the aforementioned staffing agency. As against the United States, the Plaintiff alleged a claim under Section 5(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA"), codified at 33 U.S.C. §§ 901-950. The Plaintiff alleged that, as owner of the Vessel, the United States "and its agents" owed Hernandez a duty to

3

provide a safe workplace and warn of latent dangers, and to intervene when aware of dangerous conditions arising from the improvidence of other parties. This claim was also stated against "Crowley," a term defined to include both Crowley entities. The Plaintiff alleged that "Crowley" had contracted with the United States to "crew, provision, and operate the Vessel." (Entry No. 1 at ¶ 12. In addition to the LHWCA § 5(b) claim, the Plaintiff alleged claims for negligence, wrongful death, and survival against the "Contractor Defendants," defined to include all defendants other than the United States.

The United States and the two Crowley entities answered the Complaint on May 19, 2021 (Entry No. 12). In that answer, the United States admitted to owning the Vessel. The United States and the two Crowley entities further admitted that the United States had contracted with CGS to perform certain services. (Entry No. 12 at ¶ 11). CGS and CMC now move for summary judgment.

ARGUMENT

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The nonmovant "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986) (quoting *First*

4

*Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, (1968)). Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. *Anderson*, 477 U.S. at 255. However, a mere "scintilla" of evidence will not preclude summary judgment. *Id.* at 252.

Here, the controlling statutes are clear that CGS and CMC are entitled to judgment in this case. As representative of the estate of a deceased ship repair worker, the Plaintiff's only remedy against the owner or operator of the *Lummus* is a negligence claim under Section 5(b) of the LHWCA. Moreover, is it clear that CGS operated the *Lummus* as an agent of the United States. Thus, the action against the United States provided by the Public Vessels Act and Suits in Admiralty Act is exclusive of any further remedy against agents of the United States, including CGS. Finally, CMC is a holding company with no involvement in the operation of the *Lummus*.

I.  THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT PROVIDES THE EXCLUSIVE REMEDY AGAINST THE VESSEL OWNER OR OPERATOR FOR NEGLIGENCE RESULTING IN THE DEATH OF A SHIP REPAIR WORKER

The LHWCA provides a comprehensive statutory regime for compensating longshore and ship repair workers who are injured or killed in the course of their employment. In general, employers of such workers must secure the no-fault compensation required by the LHWCA. If the employer does so, LHWCA compensation becomes the exclusive remedy against that employer. 33 U.S.C. § 905(a). A covered employee, for purposes of the LHWCA, "means any person engaged in maritime employment, including a "ship repairman." 33 U.S.C. § 902(3). Here, the Plaintiff's decedent is alleged to have been employed as a welder and to have been "refurbishing lifeboat davits on the Vessel" at the time of his fatal injury. He was undoubtedly employed as a "ship repairman" for LHWCA purposes.

Section 5(b) of the LHWCA further provides that an employee injured[3] by "the negligence of the vessel" may "bring an action against the vessel as a third party." 33 U.S.C. § 905(b). This remedy is "exclusive of all other remedies against the vessel." 33 U.S.C. § 905(b). *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001) (with respect to employer and vessel defendants, "the LHWCA expressly pre-empts all other claims"); *Becker v. Tidewater Inc.*, 586 F.3d 358, 373 (5th Cir. 2009) ("Section 905(b) of the LHWCA provides the exclusive remedy for a longshoreman against a vessel."); *White v. Fincantieri Bay Shipbuilding*, 2021 AMC 499, 2021 U.S. Dist. LEXIS 211284 at *8, 2021 WL 5087788 (E.D. Wis. 2021) ("In short, Section 905(b) allows the exclusive remedy for maritime torts to be asserted against vessels."); *In re MS "Madeleine" Schiffahrtsgesellschaft mbH & Co., KB*, 2009 AMC 1845, 1850-51 2009 U.S. Dist. LEXIS 101465, *13-14 (S.D. Fla. 2009) (dismissing Florida wrongful death claims as preempted by LHWCA); *Thames v. M/V Tarago*, 2006 AMC 633, 638 n.5, 2006 U.S. Dist. LEXIS 3596, *12 n.5 (D. Md. 2006) ("common law negligence" claim fails due to 905(b) preemption).

The term "vessel," as used in LHWCA § 5(b), is not limited to the ship itself. It also includes the vessel's "owner, owner *pro hac vice*, agent, operator, charter or bareboat charterer, master, officer or crewmember." 33 U.S.C. § 902(21). The United States obviously falls within this definition, since it owns the *Lummus*. CGS, moreover, also falls within the ambit of this definition, since as previously discussed, it operated the Vessel under a contract with the United States. It follows that the Plaintiff's exclusive remedy against CGS as operator of the Vessel is Section 5(b) of the LHWCA. And indeed, the Plaintiff's first cause of action against Crowley is for just such relief. The Plaintiff's second claim, however, is for "negligence." If this negligence

---

[3] The term "injury," as used in the LHWCA, includes "accidental injury or death arising out of and in the course of employment." 33 U.S.C. § 902(2).

claim is legally distinct from the remedy provided by LHWCA § 5(b), it is preempted; otherwise, it is simply duplicative of that remedy. The Plaintiff's third and fourth causes of action are based on South Carolina statutes and are clearly preempted by the LHWCA. In short, the Plaintiff's only potential claim against persons falling within the LHWCA's definition of "vessel"—the United States and CGS included—is pursuant to 33 U.S.C. 905(b).

II.     THE REMEDY PROVIDED BY THE PUBLIC VESSELS ACT AND SUITS IN ADMIRALTY ACT IS EXCLUSIVE OF ANY OTHER REMEDY AGAINST CGS AS AGENT OF THE UNITED STATES

Moreover, the Plaintiff's LHWCA remedy may be brought only against the United States. It is undisputed that the *Lummus* is a public vessel of the United States. The Plaintiff alleges, as she must, that the United States is amenable to suit in this matter pursuant to the Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101-31113, and the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30918 ("SIAA"). The PVA permits an *in personam* admiralty suit against the United States for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). Such an action is expressly subject to Chapter 309 of Title 46, *i.e.*, the SIAA. 46 U.S.C. § 31103. The SIAA in turn provides that "[if] a remedy is provided by this chapter, it shall be *exclusive* of any other action arising out of the same subject matter against the officer, employee, or *agent* of the United States or the federally-owned corporation whose act or omission gave rise to the claim." 46 U.S.C. § 30904 (emphasis added).

The Fourth Circuit was among the first courts to enforce the SIAA's exclusivity provision in the case of contractual operators such as CGS. In *Smith v. United States*, 346 F.2d 449, 450 (4th Cir. 1965), *cert. denied*, 382 U.S. 868 (1965), the tanker *Potomac*, a public vessel, was operated by Marine Transport Lines, Inc. ("MTL") pursuant to a government contract. One crewmember aboard the vessel was killed and another injured in a shipboard explosion. In applying the SIAA's exclusivity provision, the Fourth Circuit noted that MTL was obligated by contract to carry out the

7

government's operating orders. The Court further noted that the government's instructions "stress[ed] the continuing national character of the ship, underscoring the entitlement of the vessel to all the sovereign immunities and privileges of any Navy ship, including those of international and diplomatic stature, which [MTL] on its own could neither enjoy nor insist upon." *Id.* at 452. The Fourth Circuit affirmed the lower court's conclusion that the contractor was an agent of the United States for purposes of the SIAA's exclusivity provision, such that MTL was exonerated from liability. *Id.* at 454. *Accord, In re United States*, 367 F.2d 505, 510 (3d Cir. 1966).

In *Manuel v. United States*, 50 F.3d 1253 (4th Cir. 1995), the plaintiff was employed as a seaman aboard the M/V CAPE FLORIDA, another public vessel. The vessel was operated by International Marine Carriers, Inc. ("IMC") pursuant to a government contract. The plaintiff made a claim for maintenance and cure benefits against IMC after he was injured aboard the vessel. 50 F.3d at 1254. After a review of legislative history surrounding a 1950 SIAA amendment, the Fourth Circuit concluded that "Congress intended § [30904] to require seamen to sue the United States on any maritime action arising out of an injury on a ship owned by or operated for the government, even if the action arises from the negligence of an agent's employee." 50 F.3d at 1259. *Accord*, *Kasprik v. United States*, 87 F.3d 462, 466 (11th Cir. 1996).

Any number of other cases have held that government contractors who operate public vessels qualify as agents of the United States for purposes of SIAA exclusivity. *See Favorite v. Marine Pers. & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992) ("MTL was an agent of the United States and covered by § 5 of the SAA."); *Gibson v. Ocean Shipholdings, Inc.*, No. 15-662, 2015 U.S. Dist. LEXIS 146806, at *9 (E.D. La. Oct. 29, 2015) ("[I]t is undisputed that the ship was a part of the fleet of the MSC and thus subject to extensive governmental control. Accordingly, the agency prong is met."); *Johnson v. Sunoco, Inc.*, No. 16-05512, 2017 U.S. Dist. LEXIS 54600,

at *11 (E.D. Pa. Apr. 7, 2017). In the very recent case of *Kelly v. United States*, 2022 AMC 7, 2022 U.S. Dist. LEXIS 3513, 2022 WL 80497 (D. Md. 2022), defendant Tote Services LLC ("Tote") operated a public vessel "pursuant to a contract with the United States." The plaintiff seaman injured himself working aboard the vessel. The court held that Tote was engaged to "conduct the business of a vessel owned or bareboat chartered by the United States," and was thus an agent. *Id.* at _ (quoting *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206 (4th Cir. 1995)). The plaintiff was therefore "precluded from suing Defendant Tote." *Id.* at *6-7.  *See also Gibson v. Ocean Shipholdings, Inc.*, No. 15-662, 2015 U.S. Dist. LEXIS 146806, at *8-9 (E.D. La. Oct. 29, 2015) ("[t]he relevant jurisprudence provides overwhelming support for the proposition that a contract operator of a public vessel is, by definition, an agent for the purposes of the exclusivity provision.").[4]

CGS was just such a contract operator of the *Lummus*. As explained above, CGS operated the *Lummus* pursuant to a contract with MSC. That contract clearly subjected the *Lummus* and other vessels named in the contract to MSC's operational control, requiring the masters furnished by CGS to comply with MSC's various orders. CGS was specifically directed to invoke the United States' sovereign immunity on behalf of the subject vessels. There is plainly no distinction between the MSC Contract at issue here and the other government contracts which, in the cases discussed above, were held to create an agency relationship between the United States and its contractors for purposes of the SIAA exclusivity. It follows that the Plaintiff cannot assert her § 905(b) claim, or any other claim, against CGS. Her exclusive remedy under the SIAA is a claim against the United States.

---

[4] Although most of the cases on this issue involve seamen's claims, a claim under 33 USC § 905(b) can also be brought against the government pursuant to the SIAA. See, e.g., *Gauthreaux v. United States*, 712 F. Supp. 2d 458, 461 (E.D. Va. 2010).

III.     CROWLEY MARITIME CORPORATION HAD NO INVOLVEMENT IN THE OCCURRENCE AT ISSUE IN THIS CASE

The Complaint does not distinguish between Crowley Maritime Corporation and Crowley Government Services, Inc. If CMC was also the contractual agent of the United States, it would have the same immunity under the PVA and SIAA as CGS. But discovery has clarified CMC's role. As noted above, CGS operated the *Lummus* pursuant to a contract with MSC. Crowley Maritime Corporation was not a party to that contract, nor was it a party to the ship repair contract between CGS and DSI. In a Rule 30(b)(6) deposition convened by the Plaintiff, a CMC representative testified that CMC is a holding company that owns CGS and various other companies. (Exhibit 3, CMC 30(b)(6) Deposition, at pp. 6-7). CMC is not involved in CGS's operations and had no involvement in the repairs to the *Lummus* performed at DSI. *Id.* at 11-12, 8-9. CMC is not liable merely by virtue of its ownership of CGS. *See, e.g.*, *Brown v. Margrande Compania Naviera, S. A.*, 281 F. Supp. 1004, 1005 (E.D. Va. 1968) (dismissing salvage claim against parent company). Judgment should therefore also be granted in CMC's favor.

CONCLUSION

The Plaintiff's claims represent multiple attempts at an "end run" around remedies devised by Congress for compensation of ship repair workers and their families in cases of death or injury on public vessels. The Plaintiff attempts to sue the decedent's statutory employer, DSI, in the face of that employer's apparent immunity under the LHWCA. She asserts state law claims against the Crowley entities, even though Section 5(b) of the LHWCA is the sole remedy for negligence against defendants falling within the LHWCA definition of "vessel." And she sues CGS, the contractual operator of a public vessel, even though the PVA and SIAA clearly state that the action against the United States afforded by those Acts is Plaintiff's exclusive remedy against the vessel and that no such claim shall lie against agents of the United States.

These claims should be rejected, especially against CGS and CMC. Any remedy against vessel entities is confined to LHWCA § 5(b). Under the exclusivity provision of the PVA and SIAA, the LHWCA § 5(b) claim is limited to the United States and may not be brought against CGS, which operated the vessel as an agent of the government. There is similarly no basis for any claim against CMC, a separate holding company with no involvement in any of the events giving rise to this case.

Respectfully submitted this 3rd day of June 2022.

By: /s/ Ryan Gilsenan
Ryan Gilsenan, Fed I.D. No. 9837
Julius H. Hines, Fed. I.D. No. 5807
Edward N. Smith, Fed I.D. No. 13429
1535 Hobby Street, Suite 203-D
Charleston Navy Yard
North Charleston, SC 29405
T: 843.266.7577
gilsenan@hinesandgilsenan.com
hines@hinesandgilsenan.com
smith@hinesandgilsenan.com
*Counsel for the Defendants United States of America, Crowley Maritime Corporation, and Crowley Government Services, Inc.*