# EXHIBIT 7

Page 1

1                UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH CAROLINA
2                     CHARLESTON DIVISION
                         IN ADMIRALTY
3
4     TIFFANY N. PROVENCE, AS THE
      PERSONAL REPRESENTATIVE OF
5     THE ESTATE OF JUAN ANTONIO
      VILLALOBOS HERNANDEZ,
6
                      Plaintiff,
7
            vs.           CASE NO. 2:21-cv-965-RMG
8
      UNITED STATES OF AMERICA,
9     CROWLEY MARITIME CORPORATION,
      CROWLEY GOVERNMENT SERVICES,
10    INC., DETYENS SHIPYARDS, INC.
      AND HIGHTRAK STAFFING, INC.
11    D/B/A HIGHTRAK STAFFING, INC.,
12                 Defendants.
13
      VTC
14    30(b)(6)
      (CONTINUED)
15    DEPOSITION OF:   CROWLEY GOVERNMENT
                       SERVICES BY PAUL VARGHESE
16
17    DATE:            March 9, 2022
18    TIME:            10:44 AM
19    LOCATION:        Hines & Gilsenan, LLC
                       1535 Hobby Street, Suite 203D
20                     Charleston Navy Yard
                       North Charleston, SC
21
      TAKEN BY:        Counsel for the Plaintiff
22
      REPORTED BY:     Priscilla Nay,
23                     Court Reporter
                       (Remotely via VTC)
24
25

30(b)(6)  Paul Varghese Cont'd                    March 9, 2022
Provence, Tiffany N v. United States of America, et al

                                                    Page  3

1                          (EXHIBIT 1, Amended Notice of

2          Deposition, was marked for identification.)

3                          PAUL VARGHESE

4          being first duly sworn, testified as follows:

5                          EXAMINATION

6          BY MR. YOUNG:

7                  Q.   Okay.  Sir, we were talking earlier.

8          You -- you mentioned that when you were first port

9          engineer you operated vessels in ROS status and

10         that at the time the Lummus was up here at Detyens

11         Shipyard in April of 2019 it was in RAV status.

12         Can you tell us what RAV status means.

13                 A.   That is correct.  RAV is Repair

14         availability status.  So during RAV the vessel is

15         not fully certified.

16                      It is not fully crewed and it is not

17         operational.  It is a maintenance -- a repair

18         status.  It's a repair status.

19                 Q.   Okay.  And while the vessel is in

20         repair status are members from the Crowley crew on

21         the vessel?

22                 A.   There are -- there a reduced number of

23         RAV crews specified by the MSC contract.

24                      THE COURT REPORTER:  And I'm sorry to

25         interrupt.  I was just going to ask.  Sir, I am

30(b)(6)  Paul Varghese Cont'd                      March 9, 2022
Provence, Tiffany N v. United States of America, et al

                                              Page 23

1      BY MR. YOUNG:

2            Q.    Okay.   The safety management system

3      still existed?   It just didn't comply because

4      the vessel wasn't in operational status.   Is

5      that right?

6            A.    That is accurate.

7            Q.    All right.   And so the safety

8      management system for the Lummus, would it include

9      all kinds of safety procedures that would apply to

10     the Lummus?

11           A.    Yes.   When the vessel is under the

12     master's command and operating there will be

13     procedures and forms and all the policies that

14     applies to the vessel.

15           Q.    Okay.   And would those safety

16     management policies include policies that were

17     pertinent to the lifeboat systems on the vessel?

18     On the Lummus.

19           A.    Yes, while in operation.

20           Q.    While it's in operation?

21           A.    Yes.

22           Q.    And then when it's -- when it's in dry

23     dock those policies are suspended but the policies

24     don't change or anything?   They just don't have to

25     be --

30(b)(6) Paul Varghese Cont'd                    March 9, 2022
Provence, Tiffany N v. United States of America, et al

Page 24

1        A.    I --
2        Q.    -- in place if it's not safe?
3        A.    I --
4        Q.    Is that right?
5        A.    Yes.  I would say it is dormant, not
6    suspended.  It is dormant and when the ship come
7    back -- come back to, you know, certified status
8    after the repairs that will become active.
9        Q.    Okay.  And then you also mentioned that
10   there are some external auditors like the American
11   Bureau of Shipping that would have its own safety
12   management systems that are distinct and different
13   from Crowley's.  Is that right?
14       A.    Two things.  American Bureau of
15   Shipping has their own, but we do not deal with
16   that.  We were talking in the context of the Lummus
17   or Crowley Government Services externally audited
18   by ABS.  That is our auditing authority.
19       Q.    Yes, sir.  So, in other words, ABS will
20   review Crowley's internal safety management system
21   and either approve it, make recommendations to it
22   or whatever.  Is that right?
23       A.    That is correct.
24       Q.    Okay.  So there is a safety management
25   system for the Lummus that has been reviewed and

Page 27

1     that's -- okay.

2            Q.    Yeah.   I see that on there.   That's on

3     the face of Exhibit Number 3, correct?

4            A.    Yeah.

5            Q.    But for reference purposes and for

6     today's deposition what do you want to call this?

7     Should we call it the MSC government, the

8     government contract or what?   How do you refer to

9     it in your office?

10           A.    We call it ship management contract.

11    It's the ship management contract.

12           Q.    The ship management contract.   All

13    right.   And this ship management contract sets

14    forth the rights and responsibilities of both the

15    United States and Crowley.   Is that right?

16           A.    That's correct.

17           Q.    This is the master controlling document

18    between the United States and what it expects of

19    Crowley and what Crowley's responsibilities are and

20    what it expects from the United States.   Is that

21    right?

22           A.    That is correct.   If anything changes

23    there will be an amendment provided.

24           Q.    Okay.   All right.   So like it says here

25    on Exhibit Number 3 this was first issued July 25th

30(b)(6)  Paul Varghese Cont'd                    March 9, 2022
Provence, Tiffany N v. United States of America, et al

Page 37

1    correctly that the technical manual is an addendum

2    to this contract and a part of this contract?

3         A.   You were tapering off.  Can you repeat

4    that.

5         Q.   Yes.  Did I understand correctly that

6    the technical manual is an addendum to this

7    contract and a part of this contract?

8         A.   Yes.

9         Q.   All right.  And so while Crowley is

10   administering the repairs to a vessel like the

11   Lummus Crowley is required to comply with the

12   technical manual.  Is that correct?

13        A.   While in operation, while in repairs,

14   Crowley write the specification to get the repairs

15   done to bring it to that status.

16        Q.   Okay.  In other words, the technical

17   manual sets forth the requirements that the vessel

18   has to meet to be in operational and certified

19   status.  Is that true?

20        A.   That is correct.

21        Q.   All right.  And then while the

22   vessel is not in operational status Crowley is

23   responsible for ensuring that the work being done

24   to the vessel will be such that the vessel can be

25   back in operational status and compliance with the

30(b)(6)  Paul Varghese Cont'd                    March 9, 2022
Provence, Tiffany N v. United States of America, et al

Page 60

1           A.   That means the (inaudible) vessels

2    are three positions of vessels in Guam, Saipan and

3    Diego Garcia.  So we have to do an inspection to --

4                THE COURT REPORTER:  I'm sorry.  Can

5    you repeat your answer.  I didn't catch that.

6                THE WITNESS:  There are three

7    locations these vessels are positioned.  One is

8    Diego Garcia.  The other one is Guam and Saipan.

9    So we inspect the vessels there to identify the

10   repairs for generating the specification for the

11   repair availability.

12               THE COURT REPORTER:  I'm sorry.  I did

13   not catch the first location.  I'm so sorry.

14               MR. GILSENAN:  Diego Garcia.  It's an

15   island in the Indian Ocean.

16               THE COURT REPORTER:  I'm sorry.  I

17   could not understand.  Thank you.

18               MR. GILSENAN:  Yep.

19   BY MR. YOUNG:

20           Q.   All right.  Is this limited to vessels

21   that are in one of those three locations?

22           A.   No.  It can be on any vessels.  We do

23   this because the vessels are, you know, in their

24   locations and we need to go there and find out the

25   items for repairs.

30(b)(6)  Paul Varghese Cont'd                    March 9, 2022
Provence, Tiffany N v. United States of America, et al

Page 119

1    the contract requirements of Crowley was that

2    Crowley would be -- the last sentence there says

3    Crowley would be responsible to ensure that proper

4    safety and health precautions are taken to protect

5    the work, the workers, the public and the property.

6    I think you made that clear earlier.  Do you agree

7    with that?

8           A.   Yes, when the ship is operating under

9    the master's command.

10          Q.   And what's in the RAV status, wouldn't

11   it?

12          A.   No.  The master does not have the

13   command.  When the master doesn't have the command

14   Crowley doesn't have the control of the vessel.

15          Q.   Okay.  Well, while the vessel is in a

16   RAV status does Crowley have any responsibility for

17   safety or not?

18          A.   No.

19          Q.   Okay.

20          A.   No.

21          Q.   So while the vessel is in RAV status

22   Crowley has no responsibility whatsoever for

23   safety.  Is that your testimony?

24          A.   The safety of the crew only.

25          Q.   Okay.  While the vessel is in RAV

30(b)(6)  Paul Varghese Cont'd                    March 9, 2022
Provence, Tiffany N v. United States of America, et al

Page 143

1    injury to employees and people around the work.  Is
2    that right?
3              A.    That is correct.
4              Q.    Okay.  And what, if anything, did
5    Crowley do to make sure Detyens complied with this
6    contractual requirement?
7              A.    That Crowley have the representative
8    there.  They do have the safety meetings and then,
9    you know, daily meetings and progress meetings and
10   to verify that that job is done correctly.
11             Q.    Okay.  So a Crowley person is actively
12   involved in making sure that the job is being done
13   properly and in a safe manner?
14             A.    Crowley works in -- you know, they are
15   there to verify that, but they are not the person
16   in any of those items.  That is why the shipyard
17   has to employ the property quality of the work --
18   for work and then also to hire the workers who can
19   do the job.
20             So the responsibility is shifted to
21   the -- to the contractor and then the acceptance is
22   only from the Crowley's port.
23             Q.    Okay.  Well, how does Crowley verify
24   anything if it's not paying any attention to the
25   procedure?

Page 145

1     you know, with 200 plus items going on Crowley

2     cannot supervise all that and say there's nothing

3     done wrong.  That is where the safety management

4     system of Detyens comes into place.

5          Q.   Okay.  Fair enough.  But I want to make

6     sure I understand Crowley's position.

7               Crowley's position is you require

8     Detyens to do it, but I can't tell whether Crowley

9     is actively involved in reviewing whether Detyens

10    are doing it or whether Crowley just defers

11    completely to Detyens and has no involvement in

12    that process.

13         A.   Crowley allows Detyens to do their job.

14    Crowley will monitor whatever they can and then

15    they will do the final testing and acceptance to

16    make sure that the specification work item is

17    complete and in accordance with the spec.

18         Q.   Okay.  And so if Detyens did not use

19    its best efforts to provide a safe work environment

20    that would be a breach of this contract, right?

21         A.   Yes.

22         Q.   Okay.  And then one of the other

23    requirements here is Crowley says that all

24    equipment that -- and it's in that same Section A.

25    All equipment that presents a hazard or potential

Page 180

1          A.   I would say that was an alternative
2     because if Crowley changes their policy they could
3     do it but at this point our -- our direction from
4     the -- you know, the technical -- the government --
5     the technical models -- requirement states that we
6     should not be giving the direction.  We should not
7     be telling the shipyard how to do the job.
8          Q.   Okay.  So I think I followed you there.
9     The government has a requirement that prevents you
10    from telling Detyens how to do its job?
11         A.   Yes.
12         Q.   Is that right?
13         A.   There are specifications in
14    the government technical directives or
15    requirements, government MSC general technical
16    requirements.  It's a document and for
17    specifications of (inaudible) --
18         Q.   Okay.  So there is a specification --
19              THE COURT REPORTER:  I'm sorry.  For
20    specification of what?
21              THE WITNESS:  Specification
22    (inaudible.)
23              THE COURT REPORTER:  I'm sorry.  Of the
24    government?
25              MR. GILSENAN:  Development.

Page 230

1        A.    Right.

2        Q.    Okay.  And does Crowley Government

3   Services feel entitled to rely on the trained

4   safety officers at Detyens Shipyard?

5        A.    That is the custody and control of the

6   Detyens Shipyard.  Then we have to go by the

7   Detyens Shipyard safety management system.  Under

8   the impression and also based on -- based on the

9   information they provided Detyens had fully -- you

10  know, fully implemented their safety management

11  system in place.

12       Q.    Okay.  And is the Crowley Government

13  Services port engineer -- is he sent to the

14  shipyard as a safety expert?

15       A.    No.  He does not have a safety -- he

16  has basic safety training, but not any specific

17  kind of inspection or safety training.

18       Q.    Okay.  And is he sent to the shipyard

19  as an expert in rigging?

20       A.    No.

21       Q.    Okay.  In fact, Detyens has a rigging

22  shop.  Correct?

23       A.    Detyens has a rigging shop there and

24  they have a department that do -- that does that.

25  That is the reason Crowley is -- you know, Crowley