Page 1

```
           UNITED STATES DISTRICT COURT
            DISTRICT OF SOUTH CAROLINA
                CHARLESTON DIVISION
                    IN ADMIRALTY


   TIFFANY N. PROVENCE, AS THE PERSONAL
   REPRESENTATIVE OF THE ESTATE OF JUAN
   ANTONIO VILLALOBOS HERNANDEZ,


                Plaintiff,


         vs.       CASE NO. 2:21-cv-965-RMG


   UNITED STATES OF AMERICA, CROWLEY
   MARITIME CORPORATION, CROWLEY GOVERNMENT
   SERVICES, INC., DETYENS SHIPYARDS, INC.,
   AND HIGHTRAK STAFFING, INC. D/B/A HITRAK
   STAFFING, INC.,


                Defendants.


   DEPOSITION OF:   RICKY DESJARDINS
   DATE:            December 14, 2021
   TIME:            2:33 p.m.
   LOCATION:        DETYENS SHIPYARDS, INC.
                    1670 Dry Dock Avenue
                    Suite 200
                    North Charleston, SC

   TAKEN BY:        Counsel for the Plaintiff

   REPORTED BY:     MICHAEL DAVID ROBERTS,
                    Court Reporter
   _____
```

```
 1     welding or --
 2            A.   No.
 3            Q.   No.  That's beyond --
 4            A.   No.
 5            Q.   -- your training?
 6            A.   Yep.
 7            Q.   And you wouldn't even look for
 8     something like that?
 9            A.   No.
10            Q.   Maybe the full-time guys would, but
11     certainly --
12            A.   Right.
13            Q.   -- not you as a part-time guy --
14            A.   Right.
15            Q.   -- if I'm understanding?  Okay.
16                 Were you ever a full-time employee of
17     Detyens?
18            A.   No.
19            Q.   All right.  And then who is your actual
20     employer; is it Detyens or Hitrak?
21            A.   Hitrak.
22            Q.   So you don't really work for Detyens?
23            A.   I -- I work for Detyens through Hitrak.
24            Q.   Okay.
25            A.   I'm not really familiar how all that
```

Page 25

1      A.  They took him off the deck. I went
2 down with them -- well, they took him off the deck
3 with a main lift. And it's weight rated, so I just
4 let -- at that point, I was kind of hands-off with
5 the patient.
6      I turned it over to Charleston County
7 and to Charleston fire -- or North Charleston fire,
8 and they put him on the deck.
9      I went down there because we had some
10 of our equipment in that man basket, and I wanted
11 to retrieve that; so I did that. And then they
12 did -- after that they did their own thing,
13 Charleston County and North Charleston did their
14 thing.
15      I went back on the boat to retrieve --
16 see if we had any more equipment up there, and
17 that's when I spoke with -- that's when I was
18 speaking with Mr. Marshall. And after that, I went
19 back to the office.
20      Q.  Right. I got you.
21      So is it fair to say that really you
22 provided sort of immediate emergency response, but
23 that was your -- the nature of your involvement?
24      A.  Yes.
25      Q.  All right. And any prior walk-throughs

Page 26

1  you had done on the Lummus, you hadn't noticed
2  anything about the manner in which the davit arm
3  was stowed?
4        A.   No.
5        Q.   And you hadn't noticed any open or
6  obvious conditions that gave you any concerns about
7  the safety of the environment where Mr. Hernandez
8  was killed?
9        A.   No.
10       Q.   And it sounds like you have no memory
11 of speaking ever with anybody who was a member of
12 the ship's crew; is that right?
13       A.   No, I never spoke with anybody from the
14 ship's crew.
15       Q.   Okay.  Any conversations you had
16 relating to the Lummus would have been with Detyens
17 people?
18       A.   Yeah, if I -- yeah.
19       Q.   Or Hitrak people?
20       A.   Yes.
21       Q.   Okay.  And then I understand you didn't
22 know Mr. Hernandez and never spoke to
23 Mr. Hernandez?
24       A.   No.
25       Q.   Okay.  And it also sounds like you