# EXHIBIT 9

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF SOUTH CAROLINA
                   CHARLESTON DIVISION
                      IN ADMIRALTY
                          - - -

TIFFANY N. PROVENCE, as the       :
Personal Representative of the    :
Estate of Juan Antonia            :
Villalobos Hernandez,             :
                                  :
          Plaintiff,              :
                                  : Case No.
          vs.                     : 2:21-cv-965-RMG
                                  :
UNITED STATES OF AMERICA,         :
CROWLEY MARITIME CORPORATION,     :
CROWLEY GOVERNMENT SERVICES,      :
INC., DETYENS SHIPYARDS, INC.,    :
and HIGHTRAK STAFFING, INC,       :
d/b/a Hitrak Staffing, Inc.,      :
                                  :
          Defendants.             :
                                  :
```

_____

                DEPOSITION OF GERALD NIELSEN
_____

DATE TAKEN:   Monday, April 11, 2022

TIME BEGAN:   10:00 a.m.

TIME ENDED:   5:20 p.m.

LOCATION:     REMOTE PARTICIPATION DEPOSITION
              (All parties participated via videoconference)


REPORTED BY:  Mary Posey, Court Reporter
              EveryWord, Inc.
              P.O. Box 1459
              Columbia, South Carolina 29202
              803-212-0012

```
 1   davit arms at the beginning, which actually makes it
 2   easier to do a lot of the repair work.  So that's why
 3   I was saying from the start that this is additional
 4   information that I believe supports my opinion, it
 5   does not necessarily create a new one.  My opinions
 6   were that there were safer means and there should
 7   have been a secondary means, and from what I've seen
 8   so far, we've got a stopper bar that, according to
 9   the documentation now provided, was intended to be
10   used to hold the davit arm in place during
11   installation with a secondary means, so if they were
12   usable -- and I'm not at this point saying that they
13   were -- I would have to look at the report again and
14   look at the pictures again -- but if they were in a
15   condition to be used, that would have been a readily
16   available means of secondary retention.
17      Q    All right.  So let's focus in on this
18   concept of secondary retention in the shipyard.  All
19   right.  And I'm talking about the davit arms
20   themselves when they're not holding up lifeboats.
21           Are you familiar with any code or federal
22   regulation that specifies when davits or their
23   equivalents are required to be restrained, use two
24   different methods?
25      A    No.  There is nothing specific that I am
```

Gerald Nielsen

```
 1  around a sharp corner bend without protection from
 2  electrical currents or damage.
 3          But that's -- bear with me one second,
 4  please, just so I don't miss...
 5      Q   Sure.
 6      A   Yeah.  If the sling's in padding it just
 7  refers to sharp edges or corners.
 8          So yes, the wrapping of the wire since
 9  there was the electrical current as per the
10  investigation and report, it was not the sharp turn
11  that caused the failure of the wire.
12      Q   Right.  So if the absence of chafing gear
13  was an OSHA violation, that, however, was not the
14  mechanism of failure.  Agreed?
15      A   Agreed.
16      Q   Okay. And if the installation of the
17  Crosby clamps in the manner in which they were
18  installed was improper, that also was not the
19  mechanism of failure.  Agreed?
20      A   Correct.
21      Q   Okay. And using the single wire rope
22  restraint was also not an OSHA violation.
23      A   It's a -- and I'm clear in the report, I do
24  not state that that was an OSHA violation but it is
25  normal, customary, standard when looking at a job,
```

```
 1   especially if you're going through a JSA, especially
 2   in the last 10 years talking about drops and stored
 3   energy and line of fire, not having secondary
 4   retention on something that is suspended above
 5   workers is bad business practice at this point in
 6   time, where 20 years ago it may have been okay.
 7        Q    Okay.  Well, you talk about the industry
 8   standard and the custom and all of it.  Do you have
 9   any reason to disagree that Detyens has been
10   restraining gravity davit arms in this manner for
11   20-something years?
12        A    That's what the testimony shows, that
13   they've been doing it that way since the 1990's.
14        Q    Okay.  And so that would be the custom and
15   practice in the marine industry at Detyens Shipyard,
16   correct?
17        A    At Detyens Shipyard, yes.
18        Q    Okay.  And so I guess I just -- I can't
19   make it out.  If we have an established custom and
20   practice that has worked well for over two decades
21   and it's not an OSHA violation, and it's been
22   suspending these arms on this vessel for five months,
23   and you have rigging specialists at the shipyard who
24   sign off on this procedure, how is Crowley supposed
25   to know that there's a stray electrical current
```