**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY**

| | | |
|---|---|---|
| Tiffany N. Provence, as the Personal Representative for the Estate of Juan Antonio Villalobos Hernandez, | ) ) ) ) | C/A. No. 2:21-965-RMG |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| United States of America, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

Before the Court is Defendants Crowley Maritime Corporation ("CMC") and Crowley Government Services, Inc. ("CGS") (collectively "Crowley")'s motion for summary judgment. For the reasons set forth below, the Court grants Crowley's motion.

**I.     Background**

The USNS *1st Lieutenant Jack Lummus* (the "Vessel" or the "*Lummus*") is a public vessel of the United States. (Dkt. No. 1 ¶ 5). Pursuant to a government contract (the "Contract") awarded on July 15, 2015 by the Military Sealift Command ("MSC") the *Lummus* and five other public vessels are operated by CGS. (Dkt. No. 44-1) (copy of Contract). The Contract runs over 600 pages, and the Court discusses, *infra*, various provisions pertinent to this dispute.

Around September 5, 2018, CGS contracted with Detyens Shipyards, Inc. ("Detyens") for repairs to the Vessel. (Dkt. No. 44 at 3). The specifications for that contract required Detyens to, inter alia, "perform maintenance, repairs and renew the lifeboat falls serving the vessel's six (6) lifeboats." (*Id.*).

Per Plaintiff's complaint, decedent Juan Antonio Villalobos Hernandez was recruited by a staffing firm to work as a welder for Detyens. (Dkt. No. 1 at ¶¶ 10, 14-16).  On April 3, 2019, while assigned to work on the *Lummus*, Hernandez was killed by a lifeboat davit. (*Id.* ¶¶ 18-26).

Plaintiff Tiffany N. Provence brings this action as the Personal Representative of Hernandez. Plaintiff brings four causes of action: (1) Vessel Negligence under 33 U.S.C. § 905(b) against the United States and Crowley; (2) Negligence against, inter alia, Crowley; (3) Wrongful Death S.C. Code § 15-51-10 against all Defendants; and (4) Survival S.C. Code § 15-5-90 against all Defendants.

On June 3, 2022, Crowley moved for summary judgment. (Dkt. Nos. 44, 52).  Plaintiff opposes. (Dkt. No. 49).

Crowley's motion is fully briefed and ripe for disposition.

## II.    Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.    Analysis

First, Crowley moves to dismiss CMC from this action because it was a holding company that was not involved with the *Lummus*. (Dkt. No. 44 at 10).  Plaintiff did not challenge this argument in opposition. (Dkt. No. 49).  Accordingly, CMC is dismissed from this action.

Second, Crowley argues that the Long Shore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 905(b) provides the exclusive remedy against CGS as operator of the Vessel and that, accordingly, Plaintiff's state law and negligence claims must be dismissed.  In opposition, Plaintiff argues that a question of material facts exists as to whether CGS was acting outside its capacity as the United States' agent or operator while the vessel was being repaired. *See* (Dkt. No. 49 at 7, 14) (arguing evidence demonstrates "that Crowley was involved in various safety-related activities that were outside of its contract with the United States").[1]

---

[1] The LHWCA "authorizes covered employees to sue a 'vessel' owner as a third party for an injury caused by the owner's negligence." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 485, 125 S. Ct. 1118, 160 L. Ed. 2d 932 (2005); *see also* 33 U.S.C. § 905(b). The Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 30901-30918, and Public Vessels Act ("PVA"), 46 U.S.C. §§ 31101-31113, do not provide causes of action; rather, they constitute limited waivers of sovereign immunity by the United States and provide the "jurisdictional hook" for traditional admiralty claims against the government. *See Manuel v. United States*, 50 F.3d 1253, 1255 n.1 (4th Cir. 1995) (citations omitted). The SAA waives sovereign immunity and provides the sole basis for jurisdiction over admiralty claims against the United States that do not involve public vessels. *See Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) (citations omitted). The PVA waives sovereign immunity for claims involving public vessels. *See id.* Because the instant case involves a public vessel, "the lifting of the Government's sovereign immunity . . . is governed exclusively by the provisions in the [PVA]." *See Marine Coatings of Ala. v. United States*, 71 F.3d 1558, 1560-61 & n.3 (11th Cir. 1996). However, the same substantive law governs regardless of whether the SAA or the PVA applies, and, procedurally, the PVA incorporates the provisions of the SAA "except to the extent inconsistent with" the PVA. *See id.*; *see also* 46 U.S.C. § 31103. Accordingly, this suit

Section 905(b) allows the exclusive remedy for maritime torts to be asserted against vessels, which means "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21). *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001) (with respect to employer and vessel defendants, "the LHWCA expressly pre-empts all other claims").

CGS argues, and Plaintiff does not generally dispute, that it is the agent or operator of the Vessel. (Dkt. No. 44 at 6); *see also* (Dkt. No. 49 at 2, 13-14) ("Plaintiff does not dispute that Hernandez was a covered employee under the LHWCA, nor does she dispute that § 905(b) is the exclusive remedy for actions against Crowley based on its status as a vessel.")  CGS cites various provisions from the Contract showing both that it was the *Lummus'* operator, and that the Vessel was dedicated to government service. *E.g.*, (Dkt. No. 1-1 § 1.1.1) (requiring CGS to "operate the [Vessel] and related ship systems and equipment in accordance with United States Cost Guard (USCG) and the American Bureau of Shipping (ABS) rules and regulations); (*Id.* § 1.1.2) (stating that "Operational Control will be exercised by the Operational Commander"); (*Id.* § 1.1.3) (emphasizing the sovereign nature of the vessel, namely that "while performing ship operations, [the master of the vessel] shall advise foreign authorities that each USNS vessel under this contract is a sovereign immune vessel of the United States").

---

is brought against the United States and Crowley under the LHWCA, pursuant to the waiver of sovereign immunity contained in the PVA, which incorporates most of the SAA.

Further, the Contract explicitly required CGS to "maintain the material condition of all ships under this contract in accordance with the requirements outlined in Section 06.6 of the Technical Manual and all other applicable instructions, rules, and regulations. **This maintenance includes scheduling, managing, and documenting various preventive, predictive, and corrective maintenance actions in accordance with applicable ABS, U.S. Coast Guard, and MSC rules and policy**." (*Id.* § 2.1) (emphasis added); (*Id.* § 2.7) ("[Crowley] shall procure and manage shipyard services to comply with the provisions of this contract, conduct repairs as necessary during scheduled and unscheduled availabilities to maintain the ships within the required standards of material condition, to satisfy regulatory body and classification society requirements, and to accomplish Government directed work."); *see also* (*Id.* § 1.7.1.2) (stating Crowley "shall retain sufficient personal during overhauls and other availabilities when the ship is in Repair Availability (RAV) Status").

Crowley's management of repair "availabilities" is addressed at various locations in the Contract. (*Id.* § 2.7.4). During repair availability status, Crowley must provide shipboard personnel to "monitor repairs and alterations" and "provide for required in-port security," (*Id.* ¶ 2.7.4.1), and obtain government approval for any change in RAV [Repair Availability] vessel manning, (*Id.* § 1.7.1.2). Crowley must also provide one port engineer for shipyard work in excess of $500,000 and two fulltime Crowley port engineers and an administrative assistant for all work requiring more than 14 days to complete. (*Id.* § 2.7.2.1). Additionally, the government has the right to have a representative present onsite during repairs. (*Id.* § 2.7.2.8).

Reading all facts in a light most favorable to Plaintiff, the nonmoving party, the Court finds that CGS was the Vessel's operator and, thus, that the LHWCA provides Plaintiff's exclusive remedy against CGS for the negligence alleged in the complaint resulting in Hernandez's death.

As the above contract provisions demonstrate, CGS undisputedly operated the Vessel under § 5(b) of the LHWCA.  Accordingly, because § 905(b) provides Plaintiff's exclusive remedy against Crowley as operator of the vessel, Plaintiff's state law claims against Crowley are dismissed.

In opposing this finding, Plaintiff argues that CGS acted outside its capacity as an agent of the United States or operator of the Vessel while the Vessel was being repaired. (Dkt. No. 49 at 4-7).  Plaintiff argues that despite "Crowley's [deposition] testimony that it was not obligated to supervise or assist in safety management while the *Lummus* was undergoing repairs, there is evidence that Crowley did participate in such efforts in several ways." (*Id.* at 6). Plaintiff points to testimony, for example, that "Crowley crew members participated in daily safety walk-through inspections" and "identifi[ed] [] work items" for Detyens. (*Id.* at 6-7). Plaintiff ignores, however that the Contract specifically provided CGS would man the Vessel during repairs. *See* (Dkt. No. 49-8 at 39:6-10) (testimony of Justin Lyles of Detyens that when Lyles did his safety walks, he would "[g]et with somebody from the ship's crew to see if they have any issues"); (Dkt. No. 44-1 § 2.7.4.1) (requiring Crowley provide shipboard personnel to "monitor repairs and alterations" and "provide for required in-port security").  Plaintiff also ignores that the Contract provided for various levels of operational capacity, including during repairs. *See, e.g.*, (Dkt. No. 44-1 § 2.7.4.1) (requiring Crowley provide shipboard personnel to "monitor repairs and alterations" and "provide for required in-port security"); (§§ 1.1.3, 1.1.3.1, 1.1.3.2, 1.7.1.3) (contemplating both "Full Operating Status" and "Reduced Operating Status" ("ROS") for the Vessel, noting that ROS includes "time spent in shipyard availabilities," and that Crowley must man the Vessel in both ROS and RAV).  At bottom, the Contract "establishes that Crowley acts on the direct behalf of the United States in arranging for repair work to be performed on the public vessels covered by th[e] Contract," (Dkt. No. 52 at 3-5), and nothing about CGS's challenged actions raise a question of

6

material fact as to whether CGS exceed the duties required of it in the Contract. *See Thames v. M/V Tarago*, 2006 AMC 633, 638 n.5 (D. Md. 2006) ("common law negligence" claim fails due to 905(b) preemption).

Accordingly, Crowley's motion is granted on the above point.

Third and last, CGS argues that Plaintiff's claim under the LHWCA may only be brought against the United States and that CGS must be dismissed from this lawsuit. Specifically, CGS argues that because the *Lummus* is a public vessel of the United States, the United States is amenable to suit pursuant to Public Vessels Act ("PVA"), 46 U.S.C. § 31103-31113, and the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30908 ("SAA"), and that, per the SAA's exclusivity provision, Plaintiff's LHWCA claim may only be brought against the United States. Plaintiff, for her part, does not dispute the general applicability of the PVA or SAA, but argues instead, for the reasons already noted *supra*, that questions of material fact exist was to whether CGS acted as the agent of the United States with respect to its operation of the Vessel. (Dkt. No. 49 at 8-12).

"The [Suits in Admiralty Act] and the [Public Vessels Act] ... permit admiralty suits to be brought against the United States for causes of action arising out of the operation of vessels owned by or operated for the United States." *Manuel v. United States*, 50 F.3d 1253, 1255 (4th Cir. 1995). "Generally, a 'suit for damages caused by a public vessel falls under the PVA,' and all 'other admiralty claims against a federally-owned vessel ... [fall] under the [SAA].'" *Sys. Application & Techs., Inc. v. United States*, 491 F. Supp. 3d 73, 81 n.4 (D. Md. 2020) (quoting *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015)).[2]

---

[2] In practice, the two statutes operate similarly, and any differences are not relevant to this action. "[T]he PVA makes all claims subject to the [SAA], including its statute of limitations and its exclusivity provision, except to the extent to which the two are inconsistent." *Ali v. Rogers*, 780 F.3d 1229, 1234 (9th Cir. 2015); *see also Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206 (4th Cir. 1995) ("The PVA incorporates the SAA's exclusivity provision.").

Remedies under the SAA and the PVA are exclusive. *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206 (4th Cir. 1995). As a district court recently noted:

> The SAA contains an exclusivity provision that prevents claimants from bringing suit against any defendants other than the federal government. That provision reads, "[i]f a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim."

*Gale-Ebanks v. Chesapeake Crewing, LLC*, 525 F. Supp. 3d 620, 625 (D. Md. 2021) (quoting 46 U.S.C. § 30904). "Where the PVA or the SAA provides a remedy against the United States, there is no recourse against the government agent whose actions engendered the lawsuit." *Servis*, 54 F.3d at 207. "Any remedy available under the [SAA] is exclusive of any other remedy 'arising out of the same subject matter' that the plaintiff might bring against the individual who actually caused the harm at issue." *Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015) (quoting 46 U.S.C. § 30904). A district court lacks subject-matter jurisdiction over SAA or PVA claims not properly brought against the United States. *See id.* at 1247.

When an admiralty suit under the PVA or the SAA involves a private defendant, the court must determine whether the private party was an "agent" of the United States such that the exclusivity provision applies. *Servis*, 54 F.3d at 207. "[A] primary factor in determining agency status is the degree of operational control exercised by the United States." *Id.* at 208 (citing *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 445 (5th Cir. 1982)). "[I]t can reasonably be concluded that the term 'agent' as used in the exclusivity provision is synonymous with one who is engaged by the United States to manage and conduct the business of a government vessel." *Id.* (internal quotations omitted). The Fourth Circuit has drawn a distinction between contractors who perform discrete tasks, such as ship repair work, and the ship operator, who is

responsible for management and operations of a United States vessel. *Id.* at 208. The former "were merely non-agent independent contractors" while the latter is a "general or operating agent" for the United States. *Id.*

The Court finds that the exclusivity provision of the SAA applies and that Plaintiff's claim under § 905(b) may not be brought against CGS. *See Gauthreaux v. United States*, 712 F. Supp. 2d 458, 461 (E.D. Va. 2010) (claim under § 905(b) can be brought against government pursuant to SAA). As made clear by the contract provisions cited *supra*, CGS was "engaged" by the United States "to manage and conduct the business of a vessel owned or bareboat chattered by the United States." *Servis*, 54 F.3d at 209. CGS was thus the Government's agent, and Plaintiff is precluded from suing CGS. *Kelly v. United States*, 579 F. Supp. 3d 751 (D. Md. 2022) (holding plaintiff was precluded under exclusivity provision from suing defendant where defendant operated a public vessel "pursuant to a contract with the United States" and seaman was injured working aboard the vessel); *Smith*, 346 F.2d at 450 (applying SAA exclusivity provision where crewmember of tanker operated by defendant pursuant to a government contract was killed, noting that defendant was obligated to carry out government's operating orders, that the government's instructions "stress[ed] the continuing national character of the ship, underscoring the entitlement of the vessel to all the sovereign immunities and privileges of any Navy ship, including those of international and diplomatic statute which [defendant] on its own could neither enjoy nor insist upon"); *Gibson v. Ocean Shipholdings, Inc.*, No. 15-662, 2015 U.S. Dist. LEXIS 146806, at *8-9 (E.D. La. Oct. 29, 2015) ("The relevant jurisprudence provides overwhelming support for the proposition that a contract operator of a public vessel is, by definition, an agent for the purposes of the exclusivity provision.").

Accordingly, the Court grants CGS's motion on the above point and grants it summary judgment on Plaintiff's LSHWCA claim.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Crowley's motion for summary judgment (Dkt. No. 44).

     **AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 5, 2023
Charleston, South Carolina